345 So.2d 443 (1977)
STATE of Louisiana
v.
Joseph CAPPO.
No. 58547.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 7, 1977.
Dissenting Opinion May 16, 1977.
Risley C. Triche, Napoleonville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., Walter K. Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Joseph Cappo, was charged by bill of information with the simple burglary of Paul W. Lefort's residence, a violation of La.R.S. 14:62. At the conclusion of a five day trial, the jury found defendant guilty as charged, and he was subsequently sentenced to serve a term of nine years in the custody of the Louisiana Department of Corrections. On appeal, he urges ten assignments of error for reversal of his conviction and sentence. We reverse on the ground that defendant was improperly prevented from attempting to show corruption of the State's principal witness, Robert Tallent.
Tallent freely admitted that he had been convicted of a bank robbery in Opelousas, Louisiana, for which he had been sentenced in federal and State courts to serve terms of twenty-two and forty years, respectively; he also acknowledged that he had an agreement with the State whereby, in exchange for his testimony against defendant, he would serve no additional time for his involvement in the Lefort burglary. Tallent *444 testified that he and Everett Crawford had burglarized the Lefort residence and that although defendant had not physically participated in the crime, he had provided information about the Leforts and the money which was to be found in their home, and shared in the stolen property. According to Tallent the defendant, a resident of Orleans Parish, said he obtained part of the information from a former public official of LaFourche Parish.
In his opening statement to the jury, defense counsel asserted that Robert Tallent was a professional criminal and a deviously brilliant man who in scheming his crimes developed alternate plans to meet every contingency. Counsel claimed that Tallent's ultimate plan, in case of arrest, was to implicate innocent men and obtain leniency from the State in exchange for assisting in their prosecution. Tallent had allegedly demonstrated a pattern of falsely accusing prominent local citizens of involvement in his crimes throughout the State, and the entire defense was predicated upon proving that Tallent's charges against defendant were part of that pattern.
The State carefully confined Tallent's testimony to a discussion of the Lefort burglary. However, during a lengthy cross-examination, defense counsel questioned the witness about his numerous offenses in this State, including other burglaries in La-Fourche Parish allegedly involving defendant, and focused upon Tallent's identification of the participants in those crimes. The defense then attempted during the presentation of its case to discredit Tallent's testimony, first by showing that he had misrepresented material facts of the other crimes. The State objected on the basis of La.R.S. 15:494 which provides that "[i]t is not competent to impeach a witness as to collateral facts or irrelevant matter." After thoughtfully studying the problem, the court ruled that defense counsel, having elicited testimony as to collateral matters on cross-examination, would not be permitted to contradict that testimony by the production of other witnesses.
Defense counsel was thereafter prevented from introducing evidence to show that Tallent had wrongly accused individuals of participation in other crimes, for the purpose of placing himself in a stronger bargaining position as a potential prosecution witness.
We have previously held that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence. State v. Martin, 310 So.2d 544 (La.1975); State v. Wiggins, 50 La.Ann. 330, 23 So. 334 (1898); Cf. State v. Savoy, 170 La. 803, 129 So. 209 (1930). The rule is designed to avoid unnecessarily prolonging trials and confusing the issues by extended inquiries into extraneous matters. State v. Martin, supra; 3A Wigmore, Evidence § 1002 (Chadbourn rev. 1970). Our fundamental difference with the trial court in this instance relates to the determination of which matters are "collateral."
Facts which could have been shown in evidence for any purpose independently of the contradiction are not collateral. Thus, facts relevant to some issue in the case or otherwise receivable for the purpose of impeaching the witness are provable in contradiction. 3A Wigmore §§ 1003-1005; C. McCormick, Evidence, § 47, pp. 98-99 (Cleary ed. 1972). Defendant argues that the testimony he sought to adduce would have tended to show Tallent's corrupt testimonial intent. La.R.S. 15:492 provides:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same." (Emphasis supplied.)
If the excluded testimony was relevant to the impeachment of the witness on one of the grounds enumerated in La.R.S. 15:492 it was not collateral and should have been admitted.
*445 A witness' corruption may be evidenced by conduct indicating a general scheme to make false charges or claims. 3A Wigmore, Evidence, § 963; State v. Foster, 153 La. 154, 95 So. 536 (1923). As noted above, defendant sought to establish Tallent's disposition to make false charges by producing witnesses who would testify: 1) that Tallent had erroneously related details of other crimes in which he had been involved; and 2) that Tallent had falsely implicated innocent citizens in other crimes. We find that the first category of testimony was properly excluded. Although proof that Tallent was in error on these points might tangentially have suggested a willingness to manufacture testimony, its impeachment value was substantially reduced by the other possible explanations for such errors, e. g., poor memory and inability to observe accurately. Because it could not be inferred from a contradiction of Tallent's recital of the details of his other crimes that he was corrupt, we conclude that these matters were collateral and that an investigation into each alleged error in Tallent's testimony would unnecessarily consume the trial court's time and confuse the issues.
However, defendant's second line of attack, to show that Tallent had previously brought false accusations in connection with other crimes, bore directly on the witness' corrupt intention for the case in hand. To any objection that establishing a witness' general disposition to make false charges would not indicate a direct or personal bias against the opposing party, Wigmore would respond:
"It is time that the courts took warning here, and became more liberal. They know, and all know, that the court-room has its quota of false claimants and pretended victims of wrongs; some are children, some eccentrics, some hysterics, some insane, some nymphomaniacs, some conscious blackmailers. It is hard enough, at last, to detect and expose them. To hamper this exposure with the shibboleth `res inter alios acta' is unpractical. And the injustice of the situation is often intensified by this maddening prohibition of the very evidence to which a common-sense tribunal would most quickly resort." 3A Wigmore, Evidence, § 963, p. 811. (Footnote omitted.)
Since it might reasonably be inferred that if Tallent had a history of bringing false accusations, his testimony against defendant might be manufactured, facts tending to establish such conduct had an impeachment value independent of the contradiction and hence were not collateral. The trial court's failure to permit evidence of the witness' possible corruption was contrary to La.R.S. 15:492, and constitutes reversible error. See, State v. Guidry, 319 So.2d 415 (La.1975); State v. Wilson, 163 La. 29, 111 So. 484 (1927).
We pretermit discussion of the other issues raised on appeal.
For the reasons assigned, defendant's conviction and sentence are reversed, and the case is remanded to the district court for a new trial in accordance with the principles set forth herein.
SANDERS, C. J., and MARCUS, J., dissent.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
I do not agree that the issue here is whether the testimony sought to be impeached related to collateral matters. As I understand this record, defense counsel conceded that the testimony he sought to impeach was collateral in nature. I base this finding upon defense counsel's argument prior to the ruling by the trial judge. Therefore, this position cannot be changed on appeal, and the Court cannot properly turn the decision on an issue the trial judge has had no opportunity to rule upon.
Defense counsel cross-examined the State's witness Robert Tallent at length concerning his knowledge and participation in other crimes. These were the Sako robbery, the Melancon and Oil and Gas Building burglaries, and others. At no time in its direct examination of State witnesses or any other witness had the State alluded to *446 these collateral crimes. Because the State failed to object to this cross-examination by the defense, it was contended at the trial that the State had forfeited its right to object to the subsequent defense effort to impeach Tallent's testimony relating to those collateral matters. Defense counsel argued that he had questioned Tallent on these "collateral" matters for the specific purpose of laying the predicate to impeach his testimony. This was the sole issue presented to the trial judge.
In my view the defense deliberately sought to do exactly what Section 494 of Title 15 of the Revised Statutes prohibits. The defense effort was contrary to the rule that "It is not competent to impeach a witness as to collateral facts or irrelevant matter." Since the issue is so clearly drawn and the rule of Section 494 is so plainly stated, I find no difficulty in agreeing with the ruling of the trial judge.
The defense contention fails in its logic. The argument presented to the trial judge was, in effect, that because the defense was allowed to cross-examine the State's witness on collateral matters, the defense should be permitted to impeach that witness' testimony on those collateral matters. If such an argument were sustained there would be no reason for the rule of Section 494. Invariably the attempt to impeach a witness' testimony is a result of facts elicited from that witness by the party seeking to impeach. Thus, if the defense contention were upheld, one who is permitted to cross-examine on collateral matters could always impeach that testimony. Such a result would, of course, render Section 494 meaningless.
Furthermore, such a result would amount to a total disregard of this Court's recent expression on the subject in State v. Martin, 310 So.2d 544 (La.1975).
"This Court has often held that a party who elicits from a witness on cross-examination testimony as to a collateral matter cannot contradict that testimony by the production of other witnesses. The rule is designed to avoid unnecessarily prolonging trial by extended inquiries into extraneous matters."
See also State v. Savoy, 170 La. 803, 129 So. 209 (1930); State v. Dundas, 168 La. 95, 121 So. 586 (1929); State v. Haab, 105 La. 230, 29 So. 725 (1901); State v. Wiggins, 50 La.Ann. 330, 23 So. 334 (1898).
I respectfully dissent.