I! HIGHTOWER, Judge.
American Bonding Company and its agent, Clyde Fudge, appeal a judgment ordering the return of a bail bond premium. For reasons hereinafter expressed, we affirm.
FACTS
On June 22, 1991, Fudge posted the $2,500 bail fixed after Sean Levine’s arrest for illegal use of a weapon. Subsequently, the accused teenager’s parents, Ernest Levine and Claudia Wade, entered a second agreement with the agent when authorities filed an armed robbery charge requiring a $25,000 bond. In addition to paying the necessary fees, the couple signed both contracts as indemnitors.
*407 While awaiting trial, Sean timely appeared at each scheduled proceeding. Nonetheless, in open court on July 24,1992, Fudge surrendered the young man into custody.[1] See LSA-C.Cr.P. Art. 345. Later, upon being so ordered by the trial court, the agent relinquished the bond premium to the sheriff as required. by former LSA-C.Cr.P. Art. 338(D). Contending that good caused existed for their surrender of the accused, the bondsman and his surety company thereafter filed suit seeking release of the funds. The district court, finding that plaintiffs did not sustain their burden of proof, dismissed the action and ordered the monies returned to the indemnitors. After Fudge unsuccessfully sought a new trial, this appeal ensued.
DISCUSSION

Assignment of Error Number One

Appellants first contend that, in denying their claim, the trial court relied upon an erroneous factual finding, viz., that Fudge surrendered the accused because Claudia rejected the bondsman’s sexual advances. While we agree that the record fails to establish this type of misbehavior, it is nonetheless clear that the district court did not base its decision upon any such determination.
In his opinion on the merits, the trial judge mentioned an allegation of sexual misconduct, but expressly noted that “the Court is without sufficient facts to fully ^determine that question — which is not in and of itself germane to the primary issue before the Court.” Later, in orally denying a new trial, the court did assert a belief that Claudia’s rejection of Fudge’s advances prompted his actions. When closely read, however, these remarks pertinently disclose only a conclusion that any new evidence available for a second trial could, with due diligence, have been discovered .prior to the first trial.
Simply put, appellants have misconstrued the trial court’s reasons for judgment. Accordingly, this assignment of error is not meritorious.

Assignment of Error Number Two

Appellants next argue that the trial court erred in admitting certain evidence designed to attack Fudge’s credibility.
On direct examination, Claudia’s attorney questioned her about two separate bond documents. When she denied ever signing these, plaintiffs objected on grounds of relevancy. Further, in response to an explanation that the instruments had been forged and would be used to impugn Fudge’s credibility, counsel for plaintiffs noted that Fudge had not yet asserted “the authenticity of these documents.” On appeal, appellants argue that the evidence should have been excluded in that, pursuant to LSA-C.E. Art. 607(B), the credibility of a witness may not be attacked until he has been sworn.
This argument is not persuasive. Although Fudge had not taken the stand prior to the objection, he later testified, thus placing his credibility at issue. After acknowledging the possible non-genuineness of the two documents previously within his files, he stated that the originals disappeared after a burglary of his office in December 1991. Nevertheless, in an earlier Request for Admission of Facts, he had sought to have Claudia acknowledge the authenticity of the challenged documents. Moreover, Fudge at all times obviously intended to prove his case largely through his own testimony. Thus, under the totality of the circumstances, any error posed is harmless.
Appellants also complain about testimony concerning the means by which Fudge obtained Claudia’s written lease from the apartment complex where, he maintained, theJj¡mother and son had moved after the posting of the bond. Over objection, and albeit before plaintiffs sought to introduce the document, defendants’ attorney asked if Fudge had misrepresented himself as a marshal in order to obtain a copy of the lease agreement. Responding, the bondsman admitted displaying an honorary city marshal’s card to personnel at the facility, but said he made it clear that he used this identification only to cash checks. According to him, the *408 rental contract had been willingly relinquished. Both the manager and her assistant later disclosed, however, that Fudge presented himself as a law enforcement officer investigating Claudia. Based on further testimony, the bondsman even indicated their tenant had been “sleeping with” a district judge to avoid legal problems.
Appellants argue that, because LSA-C.E. Art. 608(B) precludes evidence of “particular acts, vices, or courses of conduct” to attack a witness’s truthfulness, defendants’ line of questioning should not have been pursued. Cf. State v. Burrell, 561 So.2d 692, 703 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991). Such reliance on this provision is misplaced, however. Only evidence used “for the purpose of attacking [the witnesses’s] character for truthfulness” is prohibited by LSA-C.E. Art. 608(B). Said another way, this article bars the use of specific acts to prove an individual’s general reputation or character. When, as here, the evidence in question relates directly to the particular case under consideration and the relationship between the parties involved in that litigation, the preclusion does not control.
Testimony regarding Fudge’s willingness to fabricate an identity to obtain evidence to support his case falls, instead, within the purview of LSA-C.E. Art. 607(D). That article provides that “[e]xtrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.” In discussing former LSA-R.S. 15:492 (one of the sources for Art. 607(D)), the supreme court concluded that a witness’s corruption could be evidenced by a scheme of false claims. State v. Cappo, 345 So.2d 443 (La.1977). Countering any argument that such ajjdisposition would not indicate a direct personal bias against the opposing party, the court relied upon Wig-more’s treatise:
It is time that the courts took warning here.... They know, and all know, that the court-room has its quota of false claimants and pretended victims of wrongs; some are children, some eccentrics, some hysterics, some insane, some nymphomaniacs, some conscious blackmailers. It is hard enough, at last, to detect and expose them. To hamper this exposure with the shibboleth “res inter alios acta” is unpractical. And the injustice of the situation is often intensified by this maddening prohibition of the very evidence to which a common-sense tribunal would most quickly resort.
State v. Cappo, 345 So.2d at 445, citing 3A Wigmore, Evidence, § 963, p. 811.
With even more compelling logic, if Fudge fabricated an identity to obtain evidence to ' enhance his position in this litigation, it is not unreasonable to infer that his testimony in other respects may be manufactured. Therefore, those facts tending to establish such dishonesty have impeachment value beyond an attack on the bondsman’s general reputation and, accordingly, are not collateral. Narrowly stated, Fudge’s misrepresentations bore directly on his corrupt intentions in the case at hand. Thus, the trial court’s decision to allow this evidence is not reversible error.

Assignment of Error Number Three

Appellants finally assert that the trial court erred in concluding that Fudge did not have good cause to surrender the accused off bond. Their brief, although enumerating several possible factors in the bondsman’s decision, focuses upon a single argument in this regard. The district judge, they say, failed to consider the fact of Claudia’s change of address.
The final clause of the contract between the indemnitors and the bonding company provides:
In making application for the hereinabove described Bad Bond we warrant all of the statements made on the reverse of this instrument to be true and we agree to advise the Company or its agent of any change (especially change of address) within 48 hours after such change has occurred and agree that any failure to so notify shall be cause for the immediate surrender of the defendant without any liability for the return of any part of the premium.
IsAlthough the mother admitted obtaining an apartment in addition to maintaining an ad *409 dress at the family home, our review of the record does not convince us that these activities factually precipitated the decision to surrender Sean.
During trial, and as reflected in his post-hearing brief, Fudge’s primary assertions concerning good cause included the following: Sean did not maintain regular contact with the bondsman; the parents refused to supply any collateral for the bond; and, the accused changed his address without providing proper notice.[2] Plaintiffs failed to preponderately establish that, before the open court surrendering, the agent possessed anything more than suspicions regarding the mother’s move. Fudge obtained the lease document several weeks after July 24, and a letter addressed to Claudia at the family home had been marked “Return to Sender” on July 25. Based on the record before us, the mother’s activities provide, at most, post facto justification for the bondsman’s decision, which had been reached on other grounds. Accordingly, the trial court is not clearly wrong in concluding that Fudge failed to prove he surrendered the accused for good cause.

Answer to the Appeal

In answer to the appeal, defendants seek an award of frivolous appeal damages pursuant to LSA-C.C.P. Art. 2164. Of course, recognizing that appeals are favored, courts are reluctant to impose damages of this type. Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1002 (La.1992). An appeal will be deemed frivolous if it does not present a substantial legal question, or where it is obvious either that its sole purpose is delay or that appealing counsel does not seriously believe the view of the law which he advocates. Id. Although appellees argue that Fudge’s inappropriate behavior both before and during trial support such an award, our attention must be directed toward the nature of the appeal itself rather than appellants’ actions underlying the lawsuit. Id.
leOn appeal, the bonding company and its agent sought to determine whether Claudia’s move amounted to the “good cause” required to surrender Sean off bond. Although their position has been ultimately rejected, we are not convinced that counsel acted out of ulterior purposes. Under such circumstances, frivolous appeal damages are inappropriate.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellants’ cost.
AFFIRMED.

. Sean later pled guilty to simple robbery; the court probated a resultant five-year hard labor sentence; and the state dismissed the weapons charge.

. The Wial court specifically dealt with each of these aspects in its written opinion. Such factual determinations are entitled to great weight on appeal and may not be disturbed unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review reveals no manifest error in these respects, nor do appellants challenge these findings in brief.