| PATRICIA RIVET MURRAY, Judge.
This is a criminal appeal. The defen-, dant, Kenneth Lacoste, appeals his conviction of one' count of simple possession of cocaine asserting two’ errors: (i) improper admission of other crimes evidence, and (ii) insufficiency of the evidence. Finding no error, we affirm his conviction and sentence.
STATEMENT OF THE CASE
On December 23, 2002, the State filed a bill of information charging Mr. Lacoste with one count of simple possession of cocaine, a violation of La. R.S. 40:967. On *1182 February 7, 2003, Mr. Lacoste was arraigned and entered a not guilty plea. On March 21, 2003, the trial court heard and denied Mr. Lacoste’s motion to suppress evidence. On November 20, 2003, a six-person jury tried the case and returned a verdict of guilty as charged. On May 6, 2004, the trial court sentenced Mr. Lacoste to four years at hard labor. The State then filed a multiple bill of information to which Mr. Lacoste entered a not guilty plea. On June 18, 2004, he admitted to being a second felony offender. The court vacated its prior sentence |aand resen-tenced him to serve four years at hard labor. Mr. Lacoste’s motion for appeal was granted. This appeal follows.
STATEMENT OP THE FACTS
On December 3, 2002, at about 2:45 p.m., Mr. Lacoste was arrested by Lieutenant Kenneth Harris and his partner, Detective Jeffrey Sandoz, at a residence located at 1502 North Villere Street in New Orleans. On that date, Lt. Harris and Det. Sandoz were assigned to the ATF Safe Neighborhoods Task Force. Based on information that members of the Task Force had received, the two officers went to 1502 North Villere Street to investigate.[1] When they arrived, the officers found Mr. Lacoste standing inside the yard, which was surrounded by a wooden fence. According to the officers, the gate to the yard was open, and Mr. Lacoste was standing a few feet in front of the entrance to the residence. In his right hand, Mr. Lacoste was holding a clear plastic bag containing small white objects. Based on their experience, Lt. Harris and Det. Sandoz believed the objects in the bag were crack cocaine.
Almost simultaneously with the officers spotting him, Mr. Lacoste spotted the officers. In response, Mr. Lacoste turned and ran inside 1502 North Villere. As he entered the residence, Mr. Lacoste reached up and placed the plastic bag he was holding on the ledge that was located atop the front door. The officers pursued Mr. Lacoste through the opened front door into the residence and detained |ahim in the first room. Det. Sandoz retrieved the plastic bag from above the front door. After confirming that the bag contained cocaine, the officers arrested Mr. Lacoste.[2] In a search incident to arrest, the officers seized $127.00 in currency.
The officers described their search of the remainder of the residence as limited to a cursory safety sweep to make sure that no one who might threaten their safety was hiding. According to the officers, the residence only had two rooms. The first room was a kitchen area where they detained Mr. Lacoste and a bedroom area where they found an older man. The officers confirmed that the only people they found in the residence were Mr. Lacoste and the older man. The officers questioned the older man and ascertained that he lived in the residence and that Mr. Lacoste did not. Indeed, the older man told the officers that he had no knowledge of Mr. Lacoste. During cross-examina *1183 tion, Lt. Harris testified that the older man told him that he did not want to give his name or to prosecute Mr. Lacoste for unlawful entry into the residence because he was afraid of Mr. Lacoste. Similarly, Det. Sandoz testified that the older man wanted to remain anonymous and did not want to prosecute Mr. Lacoste because he was afraid. The officers did not question the older man any further.
The parties stipulated that the State’s criminalist William Giblin, was an expert in the testing, identification, and analysis of controlled dangerous substances. They further stipulated that, if called to testify, Mr. Giblin would testify that the evidence he tested in this case was cocaine.
14The defense presented three witnesses. The first was Antonio Lewis, who testified that at the time of Mr. Lacoste’s arrest he had been renting 1502 North Villere for three months. In the mid-afternoon on the date of Mr. Lacoste’s arrest, Mr. Lewis testified that he was at his residence along with five or six friends playing cards and drinking. Suddenly, he heard a loud bang and his front door was kicked open. About a dozen (ten to twelve) police officers entered with g-uns drawn and told everyone to get on the floor and to put up their hands. The officers then brought everyone outside where they were searched and their names were run through the computer.
Once they were outside the ■ gate, Mr. Lewis testified that he noticed Mr. La-coste, who was being detained by the officers. Mr. Lewis further testified that he knew Mr. Lacoste from seeing him in the neighborhood talking to his next door neighbors, Author and Joe, who lived at 1500 North Villere. Mr. Lewis still further testified that he noticed that Joe was outside on the porch.
According to Mr. Lewis, the police held everyone outside for approximately forty-five minutes to an hour. During the entire time, Mr. Lewis testified that about a dozen. police officers remained on the scene. Mr. Lewis stated that the officers threatened everyone that they were going to jail because they were in an abandoned residence. However, Mr. Lewis stated that once he informed the officers that he was renting the residence, they let everyone go except for Mr. Lacoste. Mr. Lewis also testified that before the police arrived, the front door to his residence was closed, and the gate to his yard was padlocked. He added that the officers apparently kicked in the padlock because his landlord had to buy a new one. Mr. Lewis denied that Mr. Lacoste ran into his house, denied that the officers asked him if he knew Mr. Lacoste, denied that he ever said he did not lfiknow Mr. Lacoste, denied that he stated he was afraid of Mr. Lacoste, and denied refusing to identify himself to the police officers.
The second defense witness was Otis Howard. Mr. Howard testified that he was working on a car in the 1500 block of North Villere on the date Mr. Lacoste was arrested. He recounted that Mr. Lacoste pulled up in his vehicle and parked immediately behind the Ford on which Mr. Howard was working. Mr. Lacoste spoke to Mr. Howard briefly and then went across the street to talk to Joe. (As noted above, Joe was Mr. Lewis’ neighbor who lived at 1500 North Villere.) A few minutes later, several police units arrived, and the officers grabbed Mr. Lacoste and Joe. Mr. Howard heard a cracking sound, which he said sounded like the chain on a gate breaking. The police then entered Mr. Lewis’ fenced yard. Mr. Howard stated that he could not see exactly what occurred inside the yard because the fence *1184 blocked his view. Nonetheless, Mr. Howard stated that he saw the police walk several people out of the yard and that the police kept them there for a little while. Mr. Howard estimated that there were ten police officers on the scene in both marked units and unmarked units.
The third and final defense witness was Melvin Boudreaux. Mr. Boudreaux testified that he lives across the street from Mr. Lewis and Joe. On the day of Mr. Lacoste’s arrest, Mr. Boudreaux testified that he saw Mr. Lacoste outside talking to Joe on the porch. He then saw several police cars arrive and arrest Mr. Lacoste. The police then busted the gate open and went inside the residence at 1502 North Villere, which was located across the street. Shortly thereafter, the police exited the residence with several people. Mr. Boudreaux also recalled that Mr. Howard was outside working on a car when the police arrived. On cross-examination, Mr. Boudreaux testified he was familiar with Mr. Lacoste because he often parked his | ^vehicle in front of Mr. Boudreaux’s residence when he came to the neighborhood to visit Joe.
ERRORS PATENT
A review of the record for errors patent reveals none.
DISCUSSION
Mr. Lacoste’s first assignment of error is premised on two alleged references by the State’s witnesses (the arresting officers) to inadmissible “other crimes” evidence; to-wit: (i) Lt. Harris’ testimony that Mr. Lacoste was arrested for possession with the intent to distribute cocaine, when he was on trial only for simple possession of cocaine; and (ii) Detective San-doz’s testimony that the older man (Mr. Lewis) told him that he did not want to prosecute Mr. Lacoste for unauthorized entry into his residence because he was afraid of him.
The State counters that there are three deficiencies in this assignment of error. First, the State emphasizes that defense counsel failed to make a contemporaneous objection to this testimony as required by La.C.Cr.P. art. 841. Second, the State argues that even assuming the references are to “other crimes” evidence, the references, which involve facts stemming from the incident, fall within the res gestae exception to the general rule against admitting “other crimes” evidence. Third, as to Det. Sandoz’s testimony about the older man being afraid of Mr. Lacoste, the State stresses that this testimony was first elicited by defense counsel in cross-examining Lt. Harris.
The admissibility of “other crimes” evidence is governed by La. C.E. art. 404(B)(1), which provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be l7admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 404(B)(1). The last sentence of Article 404(B)(1) codifies the former jurisprudential exception for res gestae.
*1185 We find it unnecessary to determine whether these two references were inadmissible “other crimes” evidence or admissible res gestae evidence because we find, as the State argues, that defense counsel’s failure to make a contemporaneous objection to these references precludes Mr. La-coste from assigning these references as error on appeal. “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” La.C.Cr.P. art. 841(A). Because this issue cannot be raised for the first time on appeal, Mr. Lacoste’s complaint that these references in the officers’ testimony were to “other crimes” was not preserved for appeal.
Moreover, as the State contends, even assuming the complaint regarding Det. Sandoz’s testimony about the older man’s fear of Mr. Lacoste was preserved for appeal, defense counsel elicited the same testimony earlier at trial in cross-examining Lt. Harris. During that earlier cross-examination, it was brought out that the older man (apparently Mr. Lewis) allegedly told the officers that he was afraid of Mr. Lacoste and thus did not want to pursue charges against him.[3] Defense counsel asked Lt. Harris:
|SQ. And is it not true that in addition to what you just testified, he [the resident of 1502 North Villere] actually stated that he didn’t want to give his name because he was afraid of Mr. Lacoste?
A. He stated that he was afraid.
Q. Okay. And you took that at face value?
A. I had no reason to call the man a liar.
Q. You had no reason to believe that this was going on and his door was wide open. You had no reason to think that he might be involved?
A. I didn’t observe him in' any violation. I had no reason to call the man a liar and say that he knew Mr. Lacoste or that he allowed Mr. Lacoste to come into his residence.
Because Lt. Harris testified before Det. Sandoz, the above line of questioning was elicited at trial before Det. Sandoz testified. In his subsequent testimony, Det. Sandoz .corroborated Lt. Harris’ testimony that the older man (Mr. Lewis) informed the officers that he was afraid of Mr. Lacoste. Obviously, defense counsel’s questioning of Lt. Harris on this issue opened the door to this testimony with the express intention of impugning the credibility of the police officers with Mr. Lewis’ contrary testimony. Thus, nothing involving this testimony was preserved as error. For these reasons, we find Mr. Lacoste’s first assignment of error without merit.
1 Mr. Lacoste’s second assignment of error is that the trial court erred in denying his motion for mistrial under La. C.Cr.P. art. 770. Like the first assignment of error, this assignment of error is based on an alleged improper reference to “other crimes” evidence. Unlike the other two references, which were made by the State’s witnesses, this reference was made by the prosecutor in his closing argument. Particularly, this assignment of error is premised on the following colloquy:
1STHE STATE: “They got a tip about something pretty big says Mr. DeSalvo [defense counsel]. They got a tip about *1186 this. Mr. Lacoste dealing drugs out of 1502.”
DEFENSE: “I object, your Honor. That is improper argument. That’s misconduct not charged.”
THE COURT: “Sustained.”
THE STATE: “That’s an inference you can make ladies and gentlemen.”
DEFENSE: “No. No. It’s an inference that’s improper for you to ask them to make and I move for a mistrial.”
THE COURT: “Mistrial denied. Objection sustained. You are to disregard that last comment by the prosecutor.”
The State contends that the trial court correctly denied Mr. Lacoste’s motion for a mistrial for two reasons. First, the State argues that the prosecutor’s comment was proper under La.C.Cr. P. art. 774 because it was based, in part, on evidence admitted — Lt. Harris’ testimony that he and Det. Sandoz went to 1502 North Villere Street to investigate information that members of the Task Force had received. Second, the State argues that this comment was proper rebuttal under La.C.Cr. P. art. 774 because it was made in response to defense counsel’s argument about getting a “tip about something pretty big.” The State also argues that the prosecutor’s comment was not “other crimes” evidence but rather res gés-tate. Given that we find no error in the trial court’s denial of the motion for mistrial based on La.C.Cr.P. art. 774, we do not reach the res gestae issue.
The scope of closing argument is governed by La.C.Cr. P. art. 774, which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
1 inThe state’s rebuttal shall be confined to answering the argument of the defendant.
La.C.Cr.P. art. 774.
The trial judge is vested with broad discretion in controlling the scope of closing argument. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036. Even if the prosecutor exceeds the bounds of proper argument, an appellate court will not reverse a conviction unless “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. Id.; State v. Ricard, 98-2278, p. 5 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 396. A prosecutor retains “considerable latitude” when making closing argument. State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 374. Even where the prosecutor’s statements are improper, credit should be accorded to the good sense and fair mindedness of the jurors who have heard the evidence. State v. Snyder, 98-1078, p. 18 (La.4/14/99), 750 So.2d 832, 846.
A mistrial is warranted under La. C.Cr.P. art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant’s rights that even a jury admonition cannot provide a cure. State v. Edwards, 97-1797, pp. 19-20 (La.7/2/99), 750 So.2d 893, 906 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94). Potentially damaging remarks include direct or indirect references to another crime committed or alleged to have been committed by the defendant, unless that evidence is otherwise admissible. La. C.Cr.P. art. 770(2). The comment must be within earshot of the jury and must be *1187 made by a judge, district attorney,- or other court official. Id. Comments must be viewed in light of the context in which they are made, and the comment must unmistakably point to evidence of another crime. Edwards, 97-1797 at p. 20, 750 So.2d at 906. In In addition, the imputation must unambiguously point to the defendant, and the defendant bears the burden of proving that a mistrial is warranted. Id. If the elements of Article 770 have not been satisfied, the decision on the motion for mistrial is governed by La.C.Cr.P. art. 771, and whether a mistrial is warranted under the circumstances is within the sound discretion of the trial judge. Id.
Applying those principles to the facts of this case, we cannot say that the trial court abused its discretion in denying the motion for a mistrial.[4] The prosecutor’s comment regarding the officers receiving a tip about 1502 North Villere was clearly' made in response to defense counsel’s closing argument that “[tjhey got a tip about something pretty big” and thus proper rebuttal under La.C.Cr.P. art. 774. When the prosecutor attempted to suggest that the officers received a tip about Mr. Lacoste,[5] the trial court promptly sustained the objection and then admonished the jury. The trial court later instructed the jury that “[t]he contents of the opening statements, as well as closing argument, must not be considered as evidence in this case.” Considering that the officers never testified that they were in possession of any information targeting Mr. Lacoste himself or that they observed him engaging in any conduct consistent with narcotics sales, and considering that common sense would lead a jury to believe that the officers |12had some information which caused them to go to 1502 North Villere, the trial court’s admonishment and instructions to the jury were .sufficient to prevent any undue prejudice to Mr. Lacoste.
At trial, the defense that defense counsel presented was aimed at attacking the officers’ credibility. The three defense witnesses described a sudden large police presence (about a dozen officers) on the scene directed at the residence and all the persons inside it; in contrast, the officers’ testimony was that they (the two arresting *1188 officers) encountered only Mr. Lacoste and an older man (Mr. Lewis)(only two people) inside the residence and that they allowed the older man to remain anonymous. To support the defense witnesses’ testimony, defense counsel apparently argued that the officers did have “a tip about something big” and thus more probably than not would have sent more than two officers to the scene to walk through an open gate and an open door. On the latter point, contrary to the officers’ testimony, the defense witnesses’ testimony was that the gate was locked and the front door to the residence was closed and that the officers broke open the padlock on the gate and kicked in the front door. Thus, it was the defense, not the State, that emphasized to the jury that the officers were acting on information of ongoing criminal activity at 1502 North Villere. Accordingly, we find Mr. Lacoste was not entitled, to a mistrial when the prosecutor tried to rebut the defense argument. This assignment of error thus lacks merit.
Mr. Lacoste’s final assignment of error is that the evidence was insufficient to sustain his conviction. He suggests that not only was the testimony of the State’s witnesses contradicted by the defense witnesses, but also the State’s ] ^«¡witnesses’ testimony was not likely or logical given well-known standard police procedure. According to Mr. Lacoste, based on “common sense, logic, and knowledge of standard police procedure,” it can be concluded that: “a.) multiple police units would have responded to the scene; b.) all occupants would have been detained, identified and searched; [and] c.) forced entry would have been utilized.”
The standard for reviewing a claim of sufficiency of the evidence is well settled. Summarizing that standard, we recently stated:
[A]ll evidence, direct and circumstantial, must meet the reasonable doubt standard enunciated in Jackson v. Virginia, 443 U.S.: 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Jacobs, 504 So.2d 817 (La.1987).
[[Image here]]
An appellate court must defer to the fact finder’s credibility choices and justifiable inferences of fact. State v. Lee, 94-2584, p. 7 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, 426. It is not the function of this court to assess credibility or to reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986). The credibility determination is within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984); State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). The issue of credibility is reviewed on an abuse of discretion standard. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
State v. Bertrand, 2003-2069, pp. 4-5 (La. App. 4 Cir. 4/28/04), 874 So.2d 905, 907-OS.[6]'
luln this case, the State’s witnesses and the defense witnesses gave diametrically opposing testimony regarding the circum *1189 stances of Mr. Lacoste’s detention, the number of police officers on the scene and their actions, and the number of persons detained during the investigation. The defense counsel suggested that the jury should find the officers’ version of the events incredible, and thus infer that the officers’ testimony that Mr. Lacoste was in possession of cocaine likewise was incredible. The jury apparently concluded that the officers’ testimony was credible and established that Mr. Lacoste possessed cocaine. The most notable fact supporting the jury’s conclusion was Mr. Lewis’ ac-knowledgement that even though the officers allegedly detained, questioned, and searched everyone that was inside his residence, only Mr. Lacoste (who was detained outside his residence) was arrested.
Although Mr. Lacoste contends that it would be standard police procedure to have a large group of officers arrive at the scene together, nothing in the record supports such an assertion of standard police procedure. Standard police procedure just as likely is two members of the unit on patrol investigating a tip, and when it is corroborated, the rest of the unit arriving to assist. Indeed, Lt. Harris testified that those were the facts in this case. Lt. Harris explained that only he and Det. Sandoz initially went to 1502 North Villere. Lt. Harris further explained that although he never requested any backup assistance, other members of the Task Force later joined him and Det. Sandoz at that address after Mr. Lacoste was detained. Lt. Harris still further explained that the Task Force works together as a team and that |1Rother members of the Task Force were in the area in the event backup assistance was needed.
For these reasons, we find the jury did not abuse its discretion in accepting the officers’ testimony; concluding that Mr. Lacoste was in possession of cocaine, and rejecting the inference that the defense invited it to make. This assignment of error thus lacks merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. At the motion hearing, Lt. Harris testified that, on the day before Mr. Lacoste's arrest, he spoke with a citizen in the area who told him that a black male in his twenties "routinely sold crack cocaine from the rear yard” of 1502 North Villere. He further testified that they were on routine patrol at the time that they went to 1502 North Villere. At trial Lt. Harris and Det. Sandoz were careful not-to give the jury the substance or the timing of the citizen's tip.

. As discussed elsewhere, Lt. Harris testified that Mr. Lacoste was charged with possession with intent to distribute cocaine; however, he only was tried for possession of cocaine.

. Defense counsel apparently learned of the allegation that Mr. Lewis feared for his safety from the police report.

. In a supplemental brief, Mr. Lacoste contends that this case is analogous to State v. Robinson, 2000-1050 (La.App. 4 Cir. 4/11/01), 784 So.2d 781, writ granted and rev’d, 2001-1373 (La.4/26/02), 816 So.2d 846. The Louisiana Supreme Court reversed this court’s holding in Robinson that it was ineffective assistance for defense counsel to fail to move for a mistrial when the prosecutor made reference to “other crimes” evidence in closing arguments. Despite the Supreme Court’s reversal, Mr. Lacoste argües that this court's analysis in Robinson of the mistrial issue is directly on point and should be followed in this case. Mr. Lacoste's reliance on our analysis in Robinson is misplaced, factually and legally. Factually, this case is distinguishable in that Mr. Lacoste’s counsel, unlike the defense counsel in Robinson, did move for a mistrial. Legally, our decision in Robinson was reversed by the Supreme Court and is no longer binding precedent on any issue.

. During opening argument, the prosecutor averted to an anonymous tip regarding narcotics sales, but did not mention Mr. Lacoste. The defense counsel objected to the remark as hearsay, and the court overruled the objection without comment. However, neither police officer ever testified to the substance of the tip which led them to 1502 North Villere Street, presumably because the trial court cautioned that testimony should be limited to something that the witness did. The court also directed the prosecutor not to "go. into hearsay.” Thus, Lt. Harris merely recounted that they had “information” which caused them to go to 1502 North Villere to investigate, and Det. Sandoz did not even mention what caused the officers to go to the scene. This reference to information received appears to fall within the res gestae exception, which is discussed elsewhere in this opinion.

. In Bertrand, we further noted:
"In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Scott, 97-0028 (La.App. 4 Cir. 3/18/98), 709 So.2d 339. However, an appellate court may not disregard this duty simply because the record contains evidence that tends to support *1189 each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). An appellate court is not permitted to consider just the evidence most favorable to the prosecution, but it must consider the record as a whole since that is what a rational trier of fact would do. State v. Harge, 98-1321 (La.App. 4 Cir. 2/17/99), 730 So.2d 983. If a rational trier of fact could disagree as to the interpretation of the evidence, the view of the rational trier of fact of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra. An appellate court is not called upon to determine if it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992).’’
Bertrand, 2003-2069 at p. 4, n. 1, 874 So.2d at 907 (quoting State v. Major, 2002-0133, p. 7 n. 5 (La.App. 4 Cir. 10/2/02), 829 So.2d 625, 631-32).