TERRI F. LOVE, Judge.
[ t John Lindsey (“Mr. Lindsey”) appeals his conviction for aggravated assault and possession of a firearm by a convicted felon arising from events in November of 2008. On appeal, Mr. Lindsey claims that the trial court erred when it allowed the State to introduce evidence of the 2007 aggravated assault at trial and when it denied his motion for new trial based on newly discovered evidence. We find that Mr. Lindsey failed to lodge a contemporaneous objection as required by La.C.Cr.P. art. 841; and thus, he is precluded from raising the issue of the admissibility of the 2007 aggravated assault incident on appeal. We also find that the trial court did not err in denying his motion for new trial as the newly discovered evidence is not of such a nature that “it would probably have changed the verdict or judgment of guilty.” La.C.Cr.P. art. 851. Moreover, the record reveals an error patent in Mr. Lindsey’s original vacated sentence wherein the trial court failed to impose a mandatory fine, and we remand the matter for resentencing. Therefore, Mr. Lindsey’s conviction is affirmed and the matter is remanded for resentencing in accordance with this opinion.

\ .PROCEDURAL HISTORY

Mr. Lindsey was charged by bill of information for offenses occurring in November of 2008 including attempted murder of Richard Ricks (“Mr. Ricks”), aggravated assault of a peace officer with a firearm, and two counts of possession of a firearm by a convicted felon. Mr. Lindsey filed several motions to quash and to sever the counts; however, the trial court denied his motions.
The State then filed a motion pursuant to State v. Prieur, 277 So.2d 126 (La.1973), to introduce evidence of Mr. Lindsey’s arrest for two counts of aggravated assault with a firearm arising from a 2007 drive-by shooting at Mr. Ricks’ residence. In support of its Prieur notice, the State submitted several police reports and accompanying documents that were generated during the police investigation of the incident.[1] The trial court granted the State’s motion and issued a written ruling. The trial court concluded that given the similarities of the two incidents, notably that both drive-by shootings targeted two of the three victims in the subject prosecution and that the evidence was more probative than prejudicial, the evidence could be admitted at Mr. Lindsey’s trial.
Following a jury trial in the present matter, Mr. Lindsey was found not guilty as to the attempted second degree murder of Mr. Ricks and possession of a firearm by a convicted felon occurring on November 28, 2008. The jury, however, found Mr. Lindsey guilty of the lesser included offense of aggravated assault as to |3count three and found Mr. Lindsey guilty as charged of possession of a firearm by a convicted felon on November 25, 2008.
Mr. Lindsey subsequently filed motions for new trial and post judgment acquittal, which the trial court denied. Thereafter, the trial court sentenced Mr. Lindsey to six months in Orleans Parish prison relative to his aggravated assault conviction and to fifteen years at hard labor' for possession of a firearm by a convicted felon. *762 The State then filed a multiple offender bill of information alleging Mr. Lindsey to be a second felony offender. At the multiple bill hearing, Mr. Lindsey pled guilty to the multiple bill pursuant to a plea agreement. The trial court vacated the previously imposed sentence and sentenced the defendant according to the plea agreement to twenty-two years at hard labor to run concurrent with his six month sentence in Orleans Parish prison for aggravated assault.
Mr. Lindsey filed a motion for appeal, which the trial court granted. The appeal record was lodged with this Court, and thereafter, Mr. Lindsey filed in the trial court a motion for new trial based on newly discovered evidence. Mr. Lindsey then filed with this Court a motion to remand. This Court granted the motion and remanded the case for the sole purpose of allowing the trial court to rule on the motion for new trial.
A hearing on Mr. Lindsey’s motion for new trial was held, and the trial court denied the motion concluding that the newly discovered evidence would not have changed the verdict. The record on appeal was supplemented with a transcript of Lthe hearing, and Mr. Lindsey filed a supplemental assignment of error based on the trial court’s ruling on the motion for new trial.

FACTUAL BACKGROUND

The facts leading to Mr. Lindsey’s arrest and prosecution in the present matter took place over the course of two days in November of 2008. Additionally, the State introduced Prieur evidence from June of 2007 that the trial court found to be admissible in the present matter.
Events of June 2007

Detective Timothy Sisón

Because the trial court allowed the State to introduce evidence of the June 2007 incident, the facts surrounding the Prieur evidence are discussed first.
Detective Timothy Sisón (“Detective Si-son”) testified that in June of 2007, he investigated a drive-by shooting that took place at 1145 Terry Street. He testified that he proceeded to the location and spoke to victims Mr. Ricks and Mr. Kevin Roy (“Mr. Roy”). While at the scene, Detective Sisón learned that officers had stopped a vehicle in connection with the shooting, and two individuals had been apprehended. The two victims were then relocated to the site of the apprehension where the victims were able to identify the two suspects.
Detective Sisón testified that he was able to develop Mr. Lindsey as an additional suspect in the shooting and obtained a photograph of Mr. Lindsey which he then presented to Mr. Ricks and Mr. Roy for identification. Both men identified Mr. Lindsey as the third participant in the shooting. Detective Sisón then obtained |5a warrant for Mr. Lindsey’s arrest. Detective Sisón testified that following Mr. Lindsey’s arrest he provided Detective Si-son with a statement; however, the State failed to establish a predicate for the statement, and it was not introduced at trial in this matter.

Sergeant Henry Laurent

Sergeant Henry Laurent (“Sergeant Laurent”) testified that in June of 2007 following the report of a drive-by shooting, he was en route to 1145 Terry Street when he observed a white 2006 Mazda Millennium with temporary tags turn north from Terry Street onto De Alma Street at a high rate of speed. Suspecting the vehicle was involved in the incident Sergeant Laurent activated his lights and siren and pursued the vehicle. Sergeant Laurent testified that the chase ensued for several blocks and the Mazda entered the Gilmore *763 Park apartment complex. Sergeant Laurent testified that the vehicle was occupied by three people and that Mr. Lindsey was the driver. He also testified that as the vehicle neared the rear of the complex, it performed a quick turn between two buildings and struck a tree.
All three occupants then exited the vehicle and began to run together in the direction of another patrol car. Sergeant Laurent testified that rather than follow the subjects, he traveled around to the opposite end of the building and encountered Mr. Lindsey. Sergeant Laurent stated that Mr. Lindsey was holding a black semi-automatic pistol in his right hand and aimed the weapon at him. Sergeant Laurent testified that he fired two shots at Mr. Lindsey who then ran to the back fence of the complex, dropped his pistol, and escaped.
|fiA week after the incident at 1145 Terry Street, Mr. Lindsey was arrested pursuant to an arrest warrant. Mr. Lindsey was later charged with aggravated assault upon a police officer and pled to the offense.
Events of November 2008

Sergeant Aaron Cronk

Sergeant Aaron Cronk (“Sergeant Cronk”) testified that in November 2008 he investigated a shooting that occurred at the intersection of Holiday Drive and General Meyer Avenue. He met with the victims, Mr. Ricks, Mr. Roy, and Ms. Antoinette Davis (“Ms. Davis”), at the Fourth District police station on the night of the shooting. During the interview, Mr. Ricks identified “Lil’ Red” as the shooter. Sergeant Cronk ran the name “Lil’ Red” through the police database and learned that the name was associated with Mr. Lindsey. Subsequently, Sergeant Cronk presented a photographic lineup to Mr. Ricks who positively identified Mr. Lindsey’s photograph and described Mr. Lindsey’s vehicle as a white Dodge Ram pickup truck. Sergeant Cronk then prepared a warrant for Mr. Lindsey’s arrest and released an arrest bulletin with a description of Mr. Lindsey and the pickup truck.

Richard Ricks’ Testimony

At trial, Mr. Ricks identified Mr. Lindsey in the courtroom and informed the trial court that he wished to invoke his Fifth Amendment privilege against self-incrimination. Mr. Ricks testified that he felt he was being forced to testify against Mr. Lindsey and that he did not wish to. After the trial court appointed counsel to represent Mr. Ricks, he admitted being at home in June of 2007, when the first |7shooting occurred. Mr. Ricks testified that he did not see Mr. Lindsey in the car the day of the incident. He explained that he identified Mr. Lindsey to Detective Si-son only because Mr. Roy told him he saw Mr. Lindsey in the car, and Mr. Roy had previously shown him a photograph of Mr. Lindsey. Mr. Ricks also suggested that there was no animosity between himself and Mr. Lindsey. The State then played the 911 tape from incident, and Mr. Ricks identified several voices on the tape.
As to the November 2008 drive-by shooting, Mr. Ricks stated that he was in the driver’s seat waiting at a red light when the shooting occurred. At trial, he testified that Mr. Roy told him to “take off,” but shots rang out before he was able to drive away. Mr. Ricks stated that he did not see who was responsible for the shooting and that he could only see that the vehicle was white. Mr. Ricks also admitted identifying Mr. Lindsey in a photographic lineup, but stated that the officer pointed to Mr. Lindsey’s picture.

Officer Kevin Wheeler

Officer Kevin Wheeler (“Officer Wheeler”) testified at trial that in November of 2008, during roll call, a bulletin and photo *764 graph of Mr. Lindsey was distributed, indicating that Mr. Lindsey was wanted for aggravated assault in relation to a drive-by shooting that occurred two days earlier. Later that day, while on patrol, Officer Wheeler observed a Dodge pickup truck that fit the description of the vehicle involved in the shooting. Officer Wheeler was traveling on Pace Street when the truck crossed his path. Because of his proximity to the location of |sthe shooting and to Mr. Lindsey’s home address provided in the bulletin, Officer Wheeler testified that he suspected the truck’s involvement in the shooting.
Officer Wheeler stated that he followed the truck and upon approaching it, he activated his lights and siren, at which time the truck accelerated at a high rate of speed. The driver then lost control of the vehicle and side-swiped several parked cars. Officer Wheeler testified that the left rear wheel of the truck fell off, causing the truck to spin and slide down the street backwards. From his vantage point, Officer Wheeler was able to see the driver, Mr. Lindsey[2], and another person, in the front seat of the truck as it slid down the street.
Once the truck came to a stop, Officer Wheeler exited his patrol car. Both occupants of the truck fled on foot. Mr. Lindsey fled into an abandoned housing complex, and Officer Wheeler followed. The officer testified that he lost sight of Mr. Lindsey after he turned into a courtyard, but as Officer Wheeler came around a corner, he observed Mr. Lindsey was looking back at him. Officer Wheeler then yelled for Mr. Lindsey to stop.
Officer Wfheeler testified that Mr. Lindsey then made a move described as a “button hook,” in which he ran straight and then out at an angle. As Mr. Lindsey did so, he raised his shirt and pulled out a firearm from his waistband. Believing Mr. Lindsey was going to shoot him, Officer Wheeler drew his service weapon and fired two shots in Mr. Lindsey’s direction; however, the shots missed Mr. Lindsey, who was able to elude the officer.
| flOfficer Wheeler further testified that he returned to the truck and observed a spent shell casing. He also stated that he ran the license plate number and learned that it was stolen two days earlier. Subsequently, Detective Ryan Aucoin (“Detective Aucoin”) compiled a six person photographic lineup which included a photograph of Mr. Lindsey. Detective Aucoin showed the lineup to Officer Wheeler, who positively identified Mr. Lindsey as the subject who fled from the white truck.

ERRORS PATENT

A review for errors patent reveals errors in the defendant’s sentence for possession of a firearm by a convicted felon. La. R.S. 14:95(B) provides that a person convicted of the offense “shall be imprisoned at hard labor not less than ten nor more than fifteen years, without benefit of parole, probation or suspension of sentence and pay a fine not less than one thousand dollars nor more than five thousand dollars.”
In this case, the district court failed to deny Mr. Lindsey benefits and did not impose the mandatory fine in his original sentence for violation of La. R.S. 14:95(B). With respect to the failure to deny benefits, statutory restrictions are contained in a sentence whether or not verbally imposed by the sentencing court. See La.
*765 STATE v. LINDSEY Cite as 129 So.3d 759 (La.App. 4 Cir. 2013) La. 765 R.S. 15:301.1(A); State v. Hall 02-1098 (La.App. 4 Cir. 3/19/03), 843 So.2d 488. [2] With respect to the failure to impose a fíne, generally the failure to impose a mandatory fíne requires a remand of the ease for the imposition of the fine. See _|^State v. Jefferson, 04-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577; State v. Brown, 03-2155 (La.App. 4 Cir. 4/14/04), 895 So.2d 542. In State v. Wilson 10-1604 (La.App. 4 Cir. 7/6/11), 68 So.3d 1232, the trial court failed to impose the mandatory fine in the original vacated sentence. On appeal, this Court remanded the matter to rectify the omission in the defendant’s original sentence, even though the trial court had already vacated the original sentence and properly sentenced the defendant as a multiple offender. This Court stated, “we vacate the sentence and remand the case to the trial court to impose a legal sentence in accordance with La. R.S. 14:95.1(B).” Id., p. 7, 68 So.3d at 1236. In State v. Dickerson, 584 So.2d 1140 (La.1991), the trial court imposed a fine in addition to sentencing the defendant under La. R.S. 15:529.1. The Supreme Court concluded that the habitual offender statute does not authorize the imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment. Thus, the Supreme Court deleted the fine and default provisions of the defendant’s sentence. [3] Unlike Dickerson, Mr. Lindsey’s sentence under La. R.S. 15:529.1 did not result in the illegal sentence. Rather, the trial court’s failure to impose the mandatory fine in Mr. Lindsey’s original vacated sentence, like in Wilson, results in the error patent. Thus, this Court remands this matter to the trial court for resentenc-ing in accordance with this opinion. U,PRIEUR EVIDENCE [4]In his first assignment of error, Mr. Lindsey contends that the trial court erred when it allowed the State to introduce detailed testimony concerning the 2007 aggravated assault of Officer Laurent. Although evidence of other crimes committed by the defendant are generally inadmissible because of the substantial risk of prejudice to the defendant, pursuant to La. C.E. art. 404(B)(1), the State may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and relevant reason such as proof of “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” See also State v. Prieur, 277 So.2d 126, 128 (La.1973). The State must provide the defendant with notice and a hearing before it intends to offer such evidence. Prieur, 277 So.2d at 130. The State also bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. State v. Galliano, 02-2849, p. 2 (La.1/10/03), 839 So.2d 932, 933. Although a defendant’s prior bad acts may be relevant and otherwise admissible, pursuant to La. C.E. art. 404(B), the trial court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. See La. C.E. art. 403; See also State v. Rose, 06-0402, p. 12-13 (La.2/22/07), 949 So.2d 1236,1243-44. Mr. Lindsey claims the introduction of the evidence relating to the 2007 aggravated assault was not so distinctive to be admissible to prove identity. He 112also claims that the admission was not harmless error and that his conviction should be reversed. We pretermit discussion of whether the trial court erred by allowing the introduction of the 2007 aggravated assault as we find Mr. Lindsey failed to make a contem-
*766 poraneous objection to preserve the issue on appeal.
The record in this case reflects that Mr. Lindsey failed to preserve the assignment of error by objecting to the introduction of the Prieur evidence as required by La. C.Cr.P. art. 841, which provides in pertinent part that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” A review of the record demonstrates that although the State filed the requisite Pri-eur notice, it did not indicate that it intended to offer evidence of the 2007 aggravated assault at Mr. Lindsey’s trial. The State limited its notice to evidence of the 2007 drive-by shooting at Mr. Ricks’ residence. Additionally, the trial court’s ruling was limited to a determination of the admissibility of the other crimes evidence identified in the notice. Because the admissibility of the evidence at issue was not the subject of a written ruling, an objection was required.
Accordingly, when the State began to introduce evidence of the aggravated assault of Offlcer Laurent at trial, it was incumbent upon Mr. Lindsey to object on the basis of lack of notice and/or on the basis that the evidence was not admissible. Since Mr. Lindsey failed to lodge a contemporaneous objection as required by La. C.Cr.P. art. 841, Mr. Lindsey is precluded from raising the issue on appeal. State v. Welch, 615 So.2d 300, 303 (La.1993) (defendant waived complaint that State failed to provide Prieur notice); State v. Lacoste, 04-1625 (La.App. 4 Cir. 2/16/05), 896 So.2d 1180 (failure to lodge a contemporaneous objection to introduction of other crimes precluded defendant from raising issue on appeal).

MOTION FOR NEW TRIAL

Mr. Lindsey also alleges that the trial court erred when it denied the motion for new trial based on newly discovered evidence.
La.C.Cr.P. art. 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
[[Image here]]
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty ...
To obtain a new trial based on newly discovered evidence, the defendant must show: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not due to the defendant’s lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have changed the verdict of guilty. La.C.Cr.P. art. 851(3); State v. Brisban, 00-3437, p. 12 (La.2/26/02), 809 So.2d 923, 931. A trial court assessing the legal merits of a motion for new trial is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. State v. Brooks, 98-0693, p. 12 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 821; State v. Cureaux, 98-0097, p. 4 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 321 (a trial court has much discretion in ruling on a motion for new trial). Moreover, review of the trial court’s ruling is limited to determining whether the trial court abused its dis *767 cretion. State v. Labran, 97-2614, p. 6 (La.App. 4 Cir. 5/26/99), 737 So.2d 903, 907.
Mr. Lindsey asserts that he is entitled to a new trial after it was reported in the Times-Picayune that Officer Wheeler was dismissed from the New Orleans Police Department for lying in -violation of the department’s “truthfulness policy.” According to the November 2012 article, in October of 2011 Officer Wheeler and his partner responded to a report of a man holding a machete. The officers reported using their stun guns to subdue the subject because he was armed, but a video of the incident showed the man was not armed at the moment the officers discharged their weapons.
Mr. Lindsey argued in his motion that the facts surrounding Officer Wheeler’s dismissal were admissible to show his “corruption” pursuant to La. C.E. art. 607(D)(1). The trial court found that the only admissible evidence at a new trial would be that Officer Wheeler was dismissed from the police force and that he was dismissed for lying. Any questions regarding the particular facts that led to his dismissal would not be admitted at a new trial. Accordingly, the trial court denied the motion on the basis that the information regarding Officer Wheeler’s termination would not have changed the verdict.
La. C.E. art. 607(D)(1) provides that, “[ejxtrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.” Mr. Lindsey alleges the trial court erred in rejecting his argument that the facts surrounding Officer Wheeler’s termination were admissible |1Bto show his “corruption” and that if a fact finder were allowed to hear evidence relative to Officer Wheeler’s dismissal, specifically his history of making false accusations, it would have changed the verdict. Accordingly, Mr. Lindsey alleges that the trial court erred when it denied his motion for new trial.
In support of his claim, Mr. Lindsey cites State v. Cappo, 345 So.2d 443, 445 (La.1977), wherein the Louisiana Supreme Court stated that a “witness’ corruption may be evidenced by conduct indicating a general scheme to make false charges or claims.” In Cappo, the defendant was prevented from introducing evidence to show a key witness for the State had wrongly accused individuals of participation in other crimes for the purpose of placing himself in stronger bargaining position as a potential prosecution witness. The Louisiana Supreme Court ruled that the trial court erred by preventing introduction of such evidence. The Supreme Court drew a distinction regarding the type of evidence that is admissible. The Supreme Court found that the trial court had properly excluded witnesses who would testify that the State’s key witness had “erroneously related details of other crimes in which he was involved.” Id. However, the Court found that the trial court improperly excluded witnesses who would demonstrate that the State’s key witness had falsely implicated innocent citizens in other crimes. Id.
The Supreme Court concluded that the first category of testimony was properly excluded because “its impeachment value was substantially reduced by the other possible explanations for such errors, [including poor memory, inability to observe accurately]” and “[b]ecause it could not be inferred from a contradiction of [the key witness’ recital of the details of the crimes that he was corrupt].” Id. By contrast, the Supreme Court concluded “defendant’s second line of attack, to show that [the State’s key witness] had previously brought false accusations in 11ficonnection with other crimes, bore directly on the *768 witness’ corrupt intention for the case in hand.” Id. Accordingly, the Court concluded that the trial court erred in prohibiting the testimony.
Mr. Lindsey alleges that the evidence of the stun gun incident would establish that Officer Wheeler has a history of making false accusations in order to justify his use of force, and was “corrupt” in the same sense as the key witness in Cappo. Mr. Lindsey also contends that Officer Wheeler gained an advantage by falsely accusing the subject. Thus, Mr. Lindsey claims the jury would have reached a different verdict had they learned that Officer Wheeler previously made a false accusation that someone threatened him with a weapon.
At the hearing on the motion for new trial, the only evidence Mr. Lindsey offered in support of his contention was the November 2012 newspaper article. Notably, the evidence failed to establish whether Officer Wheeler’s alleged false statement was inaccurate or whether he purposely misrepresented the facts in order to gain some advantage for himself. Further, it is not clear whether the false statement led to the subject being charged with an offense or whether Officer Wheeler obtained an advantage in making the statement.
Nevertheless, Mr. Lindsey provided nothing more than the newspaper article to support his motion for new trial and failed to present a compelling case for allowing the evidence. Because it is well-established that extrinsic evidence is generally inadmissible for purposes of impeachment, Mr. Lindsey carried a heavy burden. Thus, considering the vast latitude the trial court has to evaluate the reliability of evidence and its impact on the verdict, we find that the trial court did not abuse its discretion in denying the motion.

Jj¿DECREE

For the foregoing reasons, Mr. Lindsey’s conviction is affirmed and the matter is remanded for resentencing in accordance with this opinion.
AFFIRMED AND REMANDED FOR RESENTENCING.

. The record indicates that Mr. Lindsey was never prosecuted for the alleged 2007 aggravated assault.

. Officer Wheeler identified the driver as the same Mr. Lindsey pictured in the police bulletin distributed during roll call.