737 So.2d 903 (1999)
STATE of Louisiana
v.
Dwight LABRAN.
No. 97-KA-2614.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1999.
*904 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorneys For Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, and Judge MICHAEL E. KIRBY.
McKAY, Judge.

STATEMENT OF THE CASE
Defendant, Dwight Labran, was charged with the December 26, 1996, first degree murder of Martin Hubbard, a violation of La. R.S. 14:30. On March 11, 1997, defendant entered a plea of not guilty. On March 27, 1997, defendant's motion to suppress the identification was denied. On July 7, 1997, following a trial on the merits, a twelve-member jury found defendant guilty as charged. On July 8, 1997, the penalty phase of the trial ended in a mistrial. *905 On July 21, 1997, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On that same day, defendant filed a pro se motion for a new trial, which was denied. Defendant's motion for appeal was granted. Before the appeal record was lodged, defendant filed a second pro se motion for a new trial, which was denied by the district court on February 27, 1998. On March 27, 1998, this court ordered the case remanded to the district court for hearing and ruling on defendant's motion for new trial. An evidentiary hearing was held on May 29, 1998. The motion was denied.

STATEMENT OF FACTS
On December 26, 1996, Martin Hubbard was shot and killed. Earlier that evening Kevin Watson a/k/a/ Kevin Ellis, and his cousin Martin Hubbard were at home watching T.V. when he received a page from Dwight Labran, asking for a ride to pick up his little girl. Watson and Hubbard picked up the defendant who got into the back seat of a maroon BMW and sat behind the driver, Kevin Watson. They pulled up at a house on France Road when Watson heard shots inside the car. Watson exited the car and ran. Labran allegedly followed Watson while brandishing a gun. Allegedly, Watson was grazed on his head by a bullet. The victim was found dead inside the car from gunshot wounds to the head.
Officer James Adams testified that on the night of the shooting he was assigned to the Fifth District and was on patrol from 3:00 p.m. and 3:00 a.m. At around 7:00 p.m. he responded to a call of a shooting in the 1900 block of Alvar Street at N. Johnson Street. He stated he completed the initial incident report. He observed Kevin Watson, who had a wound to his head. He also observed a subject slumped over inside a BMW automobile with gunshot wounds to the head. He stated he conducted a three to four minute interview with Watson before the homicide detectives arrived. He also testified that Watson did not provide him with the name of the shooter.
Detective James Anderson testified he responded to a call of a shooting in the 1900 block of Alvar Street on December 26, 1996. Upon arrival he learned that one person was dead and the other person, Kevin Watson, suffered a grazing gunshot wound to the head. Detective Anderson interviewed Watson who informed him that the defendant was the shooter. He stated Watson told him defendant lived at 1300 France Street. Anderson, Watson and several other officers relocated to that address. A woman, who identified herself as defendant's girlfriend, answered the door. Defendant was not home. Defendant's girlfriend gave Detective Anderson a work identification card reflecting defendant's name, date of birth and work address. Watson was then transported to the hospital for treatment. Subsequently, a search warrant was issued for 1300 France Street. Detective Anderson participated in the execution of the warrant, which was executed on January 9, 1997. Pursuant to the warrant, the officers searched for a .38 caliber revolver and any blood stained clothing or shoes and any property belonging to the victim. The officers seized a pair of jeans and a leather jacket, but no gun was found.
Officer Tyrone Martin testified that on January 15, 1997, he was assigned to the Downtown Development District. On that day he received a telephone call from attorney Rick Khonke. As a result of the call he proceeded to Khonke's law office where he arrested defendant for first degree murder. Defendant was informed of his rights at the time of his arrest and in the presence of his attorney.
Detective Paulette Owens testified that on December 26, 1996 she was assigned to the Fifth District, homicide unit. She responded to a call of a homicide in the 1900 block of Alvar Street. Upon arrival at the scene, Detective Owens met with Sergeant Morris who directed her to specific areas of the crime scene. On the corner of Alvar *906 and N. Johnson Streets there was a maroon BMW automobile. The car was in the drive position. Inside the vehicle was a black male in the front passenger seat with a gunshot wound to the head. She stated that Kevin Watson was not on the scene when she arrived. She testified she met Watson several hours later at the Fifth District station. Watson told her that defendant was the shooter. She later compiled a photographic line-up consisting of defendant's photograph and five photographs of individuals closely resembling defendant.
On cross-examination, Detective Owens testified she conducted the photographic line-up, even though Watson had already identified defendant as the shooter, because this is procedure. She stated bloodstains were found on the rear left passenger seat. The clothes found in defendant's home were negative for bloodstains. She also stated that she looked for the bullet that grazed Watson's head but was unable to find it. She admitted that early in the investigation Watson was not ruled out as a suspect. She stated she did not check to see if Watson was a confidential informant.
Kevin Watson testified that the victim was his cousin. He stated they knew each other all of their lives and were very close. He testified he knew defendant for six to seven months prior to the shooting. On December 26, 1996, he and the victim were watching television when defendant paged him. He telephoned defendant who asked him if he could drive him to pick up his daughter. He and the victim drove to defendant's house on France Street in a burgundy BMW. When he pulled up in front of defendant's house, the passenger side of the car was facing the house. Defendant entered the left rear of the car and sat behind the driver's seat. Watson drove away taking directions from defendant who told him to drive down Alvar Street and pull over in front of some lights. During the drive, the victim and defendant were discussing a possible record deal. He said the victim met the defendant through him. He testified that as he pulled over under the lights, he heard three shots. He jumped out of the car and ran. As he turned to find his cousin, he observed defendant chasing him and shooting at him. He stated defendant fired two or three shots at him. He saw that defendant's gun was a revolver because he has to stop and reload. He stated that one of the bullets grazed him in the head. He ran to a nearby house and asked the residents to call the police. He also asked them if they had a flashlight so that he could see if his cousin was still alive. When the police arrived he spoke to them. He and the officers relocated to defendant's home. Defendant was not there. Watson was then transported to the hospital for treatment. He was released without stitches. Later that evening he spoke to Detective Owens at the police station. He told her that defendant was the shooter. Subsequently, Detective Owens showed him a photographic line-up. Without hesitation, he identified defendant's photograph as the photograph of the shooter. He testified he was not offered anything by the police to choose defendant's photograph and was not forced to identify defendant as the shooter. He stated he identified defendant as the shooter before the line-up because he knew defendant. Watson testified the conversation between the victim and defendant concerned a record deal for which defendant was to receive $200.00 to introduce the victim to a man for whom the victim would perform rap. Watson stated the two men were not arguing and he was surprised when the defendant began to shoot.
On cross-examination, he stated that neither he nor the victim owed the defendant money, nor did the defendant owe them money. Before the shooting the defendant did not ask for money. He denied being involved in drug activity or that his house was ever searched pursuant to a warrant. Furthermore, he denied ever assisting the police with any investigation or *907 that the police ever helped him with criminal charges or that warrants were served at this mother's home.

ERRORS PATENT
A review for errors patent reveals none.

ASSIGNMENT OF ERROR
By his sole assignment of error, defendant asserts the district court erred by denying his motion for a new trial based on newly discovered evidence. Defendant argues he was denied a fair trial because state witness, Kevin Ellis, committed perjury. Specifically, defendant asserts that at trial Ellis falsely identified himself as Kevin Watson, denied he ever assisted the police in investigations, denied that he had a prior criminal record, denied that an arrest warrant had been served on his home and denied that he had been assisted by the police on pending criminal charges. Defendant argues that Ellis perjured himself to direct suspicion away from him and direct it to defendant. In addition, defendant argues that the district court erred in refusing to rule, at the evidentiary hearing, on whether counsel's cross-examination of Ellis at trial was limited. At trial, counsel questioned Ellis on his criminal background after Ellis denied that a search warrant was served on his home. The district court's ruling was based on the fact that Ellis had no prior convictions and therefore, could not be impeached at trial.
Article 851 of the Code of Criminal Procedure sets forth the reasoning behind and the grounds for a motion for new trial:
The motion for new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty....
In State v. Dabney, 91-2051 (La. App. 4th Cir. 3/15/94), 633 So.2d 1369, writ denied, 94-0974 (La.9/2/94), 643 So.2d 139, this Court stated:
In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of trial was not due to the defendant's lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce a different verdict in the event of a new trial.
91-2051, p. 15, 633 So.2d at 1380 (citing State v. Knapper, 555 So.2d 1335 (La. 1990)).
Review of this issue is limited to a determination of whether the district court abused its discretion. State v. Payn, 92-0975 (La.App. 4th Cir. 7/26/95), 659 So.2d 527, writ granted in part on other grounds and denied in part, 95-2166 (La.1/26/96), 666 So.2d 661. A trial court assessing the legal merits of such a motion is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. Id., p. 4, at 527, 659 So.2d at 529 (citing State v. Humphrey, 445 So.2d 1155 (La.1984)).
A criminal defendant's right to cross-examination is a fundamental right guaranteed by the Sixth Amendment of the United States Constitution applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The right is further guaranteed by the Louisiana Constitution and the Louisiana Code of Evidence. La. Const. art. I § 16 (1974) and La. C.E. art. 611(B). The right to cross-examine a witness includes the right to question the witness concerning any bias or self-interest attached to the *908 witness's testimony. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Senegal, 316 So.2d 124 (La.1975); La. C.E. art. 607(D).
La. C.E. art. 609.1(B) provides:
Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
In State v. Hawkins, 90-1235 (La.App. 4th Cir. 9/15/95), 667 So.2d 1070, the defendant sought to question a prosecution witness about her arrest for possession of cocaine prior to the defendant's trial, but the trial court refused to allow him to impeach the witness with evidence of arrests. The trial court, after defense counsel argued that he sought to present evidence of whether there had been a deal between her and the State, told counsel that he would be permitted to question the witness about a deal; but, defense counsel did not do so. This court, citing La. C.E. art. 609.1, held that the trial court correctly sustained the State's objection because the witness had not been convicted.
In assessing the legal merits of defendant's motion, it must be determined if Kevin Watson (Ellis) gave perjured material testimony about his identity and criminal background at trial which was known by the prosecution and which, if introduced at trial, would have changed the verdict or judgment of guilty. Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one, which is sufficient to undermine confidence in the outcome. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819, 825, citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
At the evidentiary hearing on defendant's motion, Suzanne Dickie, assistant district attorney, stated that state witness Kevin Watson's real name is Kevin Ellis. She further stated the prosecution team was unaware of Ellis's true identity at the time of the trial and she was only made aware of it when she contacted Ellis after trial when defendant raised the issue in his motion. Furthermore, Dickie stated she checked the name of Kevin Watson prior to trial and no criminal record was found. After learning Watson's true identity was Kevin Ellis, she checked the name Kevin Ellis and found no record of felony convictions at the time of trial. Computer records reflected Ellis was subsequently arrested on July 13, 1997, after defendant's trial, for illegal possession of a firearm during a crime, distribution of cocaine and possession of stolen property. Ellis's(Watson) rap sheet showed he had two prior arrests for municipal battery in February, 1996 and a juvenile arrest in 1991. Defendant boldly asserts that Ellis was wanted at the time of the shooting. However, Ellis's rap sheet does not show any outstanding arrest warrants at the time of the shooting and no evidence was presented at the evidentiary hearing to support this allegation. The record shows that Ellis lied at trial by using the alias, Kevin Watson. However, the record does not reflect that this false testimony was "material" to the case to warrant a new trial. The fact that the jury was led to believe Ellis's name was Watson does not help defendant's case. Even if Ellis had disclosed his true identity, no information would have surfaced that could have been used to impeach his testimony, which reasonably would have lead to a different result. Ellis had no prior convictions or outstanding arrest warrants only prior arrests. Pursuant to La.C.E. art. 609.1, his prior arrests could not have been used to impeach him. Therefore, the issue of prior arrests is moot.
Defendant further argues the fact that Detective Owens considered Ellis a suspect in the shooting, coupled with the jury's inquiry during deliberations that *909 they believed Ellis was involved in the crime, serves to illustrate that defendant should have been granted a new trial.
During deliberations, the jury submitted a written inquiry to the court asking, "What if we find Labran guilty, and we also believe that the driver was involved? Where are we legally?" The court responded, "I can only answer this question by saying that the only issue that is before you or the only person that is before you for your consideration is Mr. Dwight Labran. You are to decide the evidence and the law as it pertains to him only"... Thus, this inquiry by the jury does not reflect that the jury believed defendant was innocent of the charges but that Ellis was more than an innocent victim. Obviously, the jury found the evidence sufficient to support a verdict of guilty as charged. If not, the jury could have acquitted defendant.
The only "newly discovered" evidence was Ellis's true identity, which was not known by the state at the time of trial. This evidence, however, was not "material" to the case. Ellis had no prior convictions. Therefore, knowledge of his true identity would not have served to provide any evidence that could have been used to impeach Ellis and result in a finding of not guilty.
The record does not support defendant's assertion that counsel's cross-examination of Ellis/Watson at trial was limited as to the issue of leverage by the state, thus entitling him to a new trial. The record discloses that counsel conducted extensive cross and re-cross examination on the issue of the witnesses' criminal background and any assistance he may have given to or received from the police. Ellis/Watson consistently responded in the negative. No proof was offered to the contrary.
This assignment of error is without merit.
Accordingly, the defendant's conviction and sentence are affirmed. There is no error in the district court's denial of defendant's motion for a new trial.
AFFIRMED.