EDWIN A. LOMBARD, Judge.
 

 I,This appeal is from a judgment denying the defendant’s motion for a new trial. After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the trial court.
 

 
 *1180
 

 Relevant Facts
 

 The defendant, Terrence L. Nicholas was charged by bill of information on November 29, 2006, with one count of violating La.Rev.Stat. 40:966(C)(1), possession of heroin. The defendant pleaded not guilty at his arraignment on January 12, 2007, and after a hearing on February 26, 2007, which was recessed to hear testimony from an additional witness, the trial court issued his ruling on March 16, 2007, denying the defendant’s motion to suppress and finding probable cause to support the charge of heroin possession.
 

 After a jury trial on June 11, 2007, the defendant was found guilty as charged. On June 22, 2007, the defendant filed a motion for a new trial alleging that (1) the jury verdict was contrary to the law and evidence and (2) subsequent to the tidal a witness had been located who would testify that the police officers |2seized the heroin from her and that she, rather than the defendant, had been in possession of the heroin.
 

 The trial court denied the motion for a new trial on October 12, 2007, and after a multiple bill hearing on November 28, 2007, adjudged the defendant a second offender and sentenced him to ten years at hard labor with the Department of Corrections.
 

 Discussion
 

 In his sole assignment of error on appeal, the defendant argues that the trial court abused its discretion in denying his motion for new trial. The defendant’s motion is based on the alleged discovery of Rotunda Moffett, the actual perpetrator of the crime. The State, however, argues that Ms. Moffett’s testimony was not new evidence because the jury heard similar factual recitations from two other defense witnesses, that Ms. Moffett’s whei’eabouts could have been discovered prior to trial by the defendant through the exercise of due diligence, and that even had she testified at trial, her testimony would not have resulted in a different verdict.
 

 La. Code Crim. Pi*oc. art. 851 provides in pertinent part that a motion for a new tidal shall be granted whenever “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the tidal it would probably have changed the verdict or judgment of guilty. La. Code Crim. Proc. art. 851(3). To obtain a new trial based on newly discovered evidence, the defendant must show: 1) the new evidence was discovered after trial; 2) the failure to discover the evidence at the time of trial was not due to the defendant’s lack of diligence; 3) the ^evidence is material to the issues at trial; and 4) the evidence is of such a nature that it would probably have changed the verdict of guilty.
 
 State v. Brisban,
 
 2000-3437, p. 12 (La.2/26/02), 809 So.2d 923, 931. The trial judge’s duty in ruling on a motion for a new trial is to ascertain whether there is new material fit for a new jury’s judgment,
 
 State v. Prudholm,
 
 446 So.2d 729, 736 (La.1984), and, in assessing the legal merits of a motion for new trial, the trial judge is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict,
 
 State v. Brooks,
 
 98-0693, p. 12 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 821;
 
 State v. Cureaux,
 
 98-0097, p. 4 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 321. Appellate review of the trial court’s ruling is limited to determining whether the trial court abused its discretion.
 
 State v. Labran,
 
 97-2614, p. 6 (La.App. 4 Cir. 5/26/99), 737 So.2d 903, 907.
 

 The following evidence was adduced at trial. Officer Sean Ogden of the New Orleans Police Department (NOPD) Sixth District testified that he arrested the defendant on June 26, 2006, while on routine
 
 *1181
 
 patrol with his partner, Officer Christopher Carter. At approximately 11:48 p.m., Officers Ogden and Carter were in the 2200 block of Washington Avenue driving towards the lake in their marked patrol care when they observed a vehicle, approximately two car lengths distance in front of theirs, without a license plate. The vehicle was ordered to pull over in the 2300 block of Washington Avenue and the two police officers exited their patrol car and approached the vehicle.
 

 As Officer Ogden approached the driver’s side of the vehicle with his flashlight illuminated, he noticed that the windows were down, the defendant was sitting in the driver’s seat, and three other individuals sitting in the vehicle. Officer |4Ogden could see the defendant’s left hand on the steering wheel, but the defendant’s right hand was out of view. For safety purposes Officer Ogden ordered the defendant to show his right hand. As the defendant raised his right hand from his waistband area, Officer Ogden observed him drop a plastic bag containing a powdered substance towards the floorboard. Suspecting that the dropped bag contained cocaine or heroin, Officer Ogden ordered the occupants out of the car.
 

 At this point, two other officers from the Sixth District task force arrived to act as back up. The defendant and the other occupants exited the vehicle and Officer Ogden retrieved the bag from the vehicle’s floorboard. Officer Ogden identified State’s Exhibit 1 as the bag he retrieved from defendant’s vehicle.
 
 [1]
 
 Upon retrieving the bag, the officers placed the defendant under arrest. The officers also gave the defendant a traffic citation for failing to wear a seat belt. Officer Ogden identified State’s Exhibit 2 as the traffic citation given to defendant on the night of the arrest.
 

 On cross examination, Officer Ogden admitted that he did not know whether the defendant was wearing his seat belt before he pulled his vehicle over in compliance with the officers’ orders. Rather, Officer Ogden stated that the defendant was not wearing the seat belt when he first approached the defendant’s vehicle. Further, Officer Ogden refused to agree with defense counsel’s suggestions that: (1) he and his partner ordered the four occupants out of the car and forced them to kneel at the rear of the vehicle; (2) he ordered the occupants of the vehicle to remove their shoes; (3) he and his partner separated the three men |5from the sole female occupant after they failed to find any contraband in the vehicle; (4) he received the contraband from the sole female occupant; and (5) he told the defendant that his arrest was in retaliation for running away from him on a prior stop. Officer Ogclen could not recall whether he had ever met the defendant before the night of June 26, 2006.
 

 Officer Carter also testified at trial, identifying the defendant as the individual he arrested on June 26, 2006, and corroborating the Officer Ogden’s testimony as to the details of the stop and arrest. On cross-examination, Officer Carter stated that the defendant’s vehicle was approximately one car length in front of his police unit when he and his partner noticed that it had no license plate. Further, Officer Carter admitted that he could not say whether the defendant was wearing his seat belt when he and his partner decided to order the defendant to pull over. On the other hand, Officer Carter refused to
 
 *1182
 
 agree with defense counsel’s suggestions that: 1) he and his partner ordered the four occupants out of the car and forced them to kneel at the rear of the vehicle; 2) he and his partner ordered the occupants of the vehicle to remove their shoes; and 3) he and his partner received the contraband from the vehicle’s sole female occupant. Further, Officer Carter stated that he could not recall whether he knew the defendant from a previous stop.
 

 The defendant called Theapolies Branch, a lifelong friend, to testify on his behalf. Mr. Branch stated that on the evening of June 26, 2006, he, the defendant, Craig Adams, Rotunda Moffett, and an unidentified fifth person were coming back from a post-funeral dinner. After dropping off the fifth person, they turned down Dan-neel Street, made a right onto Washington Avenue, and proceeded on Washington Avenue heading towards the lake. Mr. Branch testified that a few blocks later a police unit turned off of Saratoga Street onto Washington Avenue | fiand pulled them over in the 2300 block of Washington Street. According to Mr. Branch, the defendant was driving, Mr. Adams was in the front passenger seat, he was sitting behind Mr. Adams, and Ms. Moffett was sitting behind the defendant.
 

 After stopping the vehicle and ordering the occupants out of the car, the police searched the vehicle. According to Mr. Branch, after finding several cigars in the glove compartment, the police officers demanded that the occupants hand over their marijuana. Mr. Branch told the officers that they had no marijuana, but the officers kept questioning them. Mr. Branch further testified that after additional questioning, Ms. Moffett reached into her underwear and produced a packet of heroin. Mr. Branch testified that the police then told Ms. Moffett that “[i]t was her lucky night,” released her, and placed him and the defendant under arrest. Mr. Branch stated that at the time of the arrest there was an outstanding attachment in his name stemming from unpaid fines and fees associated with a misdemeanor conviction for marijuana possession. Additionally, Mr. Branch stated that at no time did the defendant possess the heroin or discard it on the floor of the vehicle.
 

 On cross-examination, Mr. Branch testified that he and the other occupants of the car left the post-funeral dinner at approximately 10:30 p.m., that the police pulled the car over at approximately 11:00 p.m., and that the police had them “on the car” for approximately one hour. Further, Mr. Branch admitted to having a prior conviction for shoplifting and a misdemeanor conviction for possession of marijuana. Finally, Mr. Branch conceded that from where he was seated in the car he could not see the driver’s side floorboard.
 

 Craig Adams also testified on behalf of the defendant. Mr. Adams testified that he had known defendant since they were children and on the night of the |7arrest, he, the defendant, Mr. Branch, and Ms. Moffett were driving on St. Charles Avenue, turned right on Washington Avenue, and passed a police car at Washington’s intersection with Saratoga Street. Mr. Adams stated that the police followed them and stopped their vehicle near Washington’s intersection with LaSalle Street. Mr. Adams further testified that the officers ordered him and his friends to get out of the vehicle and put their hands on the vehicle. Mr. Adams noted that the officers searched him and his friends as well as the vehicle. The officers searched the four friends and forced them to remove their shoes. According to Mr. Adams, the officers initially found nothing and he assumed that he and his friends were free to leave but the officers took Ms. Moffett aside and subsequently produced a packet of narcotics. Mr. Adams claimed that the officers told him that Ms. Moffett had the
 
 *1183
 
 narcotics in her underwear and that he and his friends assumed that she would be going to jail but, despite Ms. Moffett’s protestations, the police stated that they were going to take the defendant instead. Moreover, Mr. Adams testified that while in the vehicle he never saw the defendant throw any narcotics on the vehicle’s floorboard. Additionally, Mr. Adams admitted to having a prior conviction for possession of a stolen automobile.
 

 On cross-examination, Mr. Adams testified that the police detained them for approximately thirty minutes to an hour. Further, Mr. Adams stated that when the officers first approached the vehicle they had their guns drawn and pointed in towards the occupants. However, Mr. Adams also stated that he did not look directly at the officers until after he got out of the vehicle. Additionally, Mr. Adams testified that a male officer physically searched Ms. Moffett and retrieved the narcotics from her underwear. The defense rested after presenting Mr. Adams’ testimony.
 

 |xOn rebuttal, the State recalled three witnesses: Mr. Branch, Officer Cartel', and Officer Ogden. Mr. Branch asserted that Ms. Moffett took the narcotics out of her underwear and threw them on the vehicle, but stated that he could not recall whether the officers approached the vehicle with weapons drawn or if the officers ever drew their weapons. Officers Carter and Ogden both testified no narcotics were retrieved from Ms. Moffett. Additionally, Officers Carter and Ogden both testified that, if they had suspected that Ms. Mof-fett was secreting narcotics in her underwear, they would have asked for assistance from a female officer. Finally, Officers Carter and Ogden both testified that at no time did they draw their weapons.
 

 The defendant filed a motion for new trial supported by the sworn affidavit of Ms. Moffett. In the affidavit, Ms. Moffett avers that she was a passenger in the vehicle with the defendant, Mr. Adams, and Mr. Branch on June 26, 2006, when it was pulled over by two police officers and that once she and the others were ordered out of the vehicle the officers searched the vehicle for contraband. After finding no contraband in the vehicle the officers began to question each of the occupants and, after thirty minutes of questioning, Ms. Moffett told the officers that she was in possession of heroin, removed the heroin from her underwear, and placed it on the hood of the police car. Ms. Moffett avers that she told the officers that she was going to use the heroin to “get loaded in order to cope with the death” of her cousin. Additionally, Ms. Moffett denies that a female officer conducted a search of her person. Finally, Ms. Moffett states that after receiving the heroin, the officers told her that it was her “lucky day” because they were going to arrest the defendant in retaliation for running away from them.
 

 |¡)At the August 10, 2006, hearing on the defendant’s motion for new trial, Ms. Mof-fett testified, reiterating that the heroin retrieved from the vehicle on the evening of June 26, 2006, belonged to her. Ms. Moffett testified that she was returning from her cousin’s funeral with the defendant, Mr. Branch, and Mr. Adams when the vehicle was ordered off of the road by the police. Ms. Moffett asserted that she was sitting in the vehicle’s rear seat behind the driver and that after pulling over the vehicle, the officers ordered her and her friends out of the vehicle. When the officers asked the group whether they were in possession of any narcotics, Ms. Moffett volunteered that she was in possession of narcotics which she retrieved from her underwear and gave the narcotics to the officers. After she gave the narcotics to the officers, the officers told her it was her “lucky day.” According to Ms. Moffett, she never saw any narcotics on the defendant’s person or any other
 
 *1184
 
 narcotics at the scene. On cross-examination, Ms. Moffett stated that prior to trial she had been living at her home in New Orleans East and that she had not been subpoenaed for trial. According to Ms. Moffett, even though their mothers were close friends, it would have been difficult for the defendant to locate her because her mother was in the hospital and she traveled constantly between New Orleans and Atlanta, Georgia, and, in any event, on the day of tidal she (Ms. Moffett) was in jail in Kenner, Louisiana.
 

 Although the record is unclear as to the charges underlying her detention, Ms. Moffett was apparently in jail in Orleans Parish at the time of the hearing on the defendant’s motion for new trial. The record indicates the trial court left the matter open to allow defense counsel to substantiate Ms. Moffett’s allegation that she was incarcerated in Kenner, Louisiana, at the time of the defendant’s trial. On | ^October 12, 2007, the trial judge denied the motion for a new trial, stating in part that he “simply chose not to believe Ms. Moffett.”
 

 Upon review, we do not find that the evidence supports the defendant’s assertion that new evidence was discovered after trial. Ms. Moffett’s testimony, although against her own interest, mirrored the trial testimony of Mr. Adams and Mr. Branch that it was Ms. Moffett who had the heroin secreted on her person when the vehicle was stopped by the police. Although Mr. Adams testified to the jury that the heroin was discovered on Ms. Moffett as a result of a police search, Mr. Branch’s testified that Ms. Moffett volunteered the heroin and, accordingly, Ms. Moffett’s allegation that she admitted to the police that the heroin was hers and retrieved it from her underwear cannot be characterized as new evidence. Thus, while defense counsel failed to present Ms. Moffett at trial, her testimony was not new and would not add anything to the testimony already adduced at trial. Specifically, the jury heard evidence from two defense witnesses that the police pulled over the defendant’s vehicle, ordered the occupants out of the car, searched the car and the occupants and, although it was Ms. Moffett who possessed the heroin, decided to charge the defendant with possession. Mr. Branch claimed, as did Ms. Moffett, that the officers’ acted out of retaliation for the defendant’s past behavior. Thus, the record shows clearly that the jury was presented with two mutually exclusive accounts of what transpired after the officers pulled over the defendant’s vehicle and chose to believe the officers’ testimony that the defendant was in possession of the heroin. Accordingly, given the similarity of the testimony, there is nothing in the record to suggest that the addition of Ms. Moffett’s voice to the defendant’s ease at trial would have swayed the jury. Moreover, while the defendant asserts that the testimony presented during his case£n-chiefn was more believable, there is nothing in the record to suggest that the jury’s decision to credit the officer’s testimony, rather than Mr. Adams’ and Mr. Branch’s, was unreasonable. Finally, although Ms. Moffett’s testimony goes against her own interest and she may have been difficult to locate, the lack of any attempt to subpoena her for trial undermines the defense claim of due diligence in presenting her as a witness. Accordingly, under these circumstances, we cannot find that the trial court abused its broad discretion in denying the defendant’s motion for a new trial.
 

 Conclusion
 

 The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The contents of the bag retrieved from tire floorboard of the defendant's vehicle tested positive for heroin and the defendant stipulated that, if called, Mr. Corey Hall of the New Orleans Police Department’s Crime Lab would have testified that he prepared an analysis of the contents of the bag and that the contents tested positive for heroin.