DREW, J.
 

 |! This lawsuit seeks to recover personally against an employee who executed corporate NSF checks as payment to a fuel supplier. The trial court denied relief, with thorough written reasons, which we adopt and annex as an appendix to this opinion. We affirm in all respects.
 

 Winn Fuel Services, Inc., (“Winn”) sued husband and wife, Douglas and Dana Booth, and their daughter, Michelle Brew-ton, alleging the defendants were liable
 
 in solido
 
 on two NSF checks (#4806 dated September 6, 2005, for $15,000.00 and # 4808 dated September 7, 2005, for $53,216.14) issued to Winn to pay for fuel sold at Booth Enterprises of Winn, Inc., d/b/a The Trading Post (“Booth Enterprises”).
 

 Douglas and Dana Booth were owners of Booth Enterprises and employed Brewton, who handled all the business. Winn alleged that Brewton signed the checks with the authority of the Booths and that all the defendants knew there was insufficient money in the bank to cover payment of the checks.
 

 Winn had an agreement with Booth Enterprises in which Winn leased the premises to Booth Enterprises. Winn owned the tanks and the fuel which the Trading Post was authorized to sell. The checks were intended to pay for fuel that had been pumped. Winn sought damages, attorney’s fees, costs, and legal interest, maintaining it delivered more fuel
 
 [1]
 
 in reliance upon the bogus paper.
 

 Booth Enterprises filed bankruptcy, as did Douglas and Dana Booth.
 

 1ffleasonsfor Judgment
 

 Following trial on the merits on June 4, 2009, the trial court signed a judgment on July 29, 2009, dismissing with prejudice all claims of plaintiff (Winn) against Michelle Brewton and assessing costs against the plaintiff.
 

 The trial court issued its cogent and helpful Reasons for Judgment on July 15, 2009, explaining its ruling.
 
 See appendix.
 

 Arguments of Plaintiff-Appellant, Winn Fuel Service, Inc.
 

 The contractual relationship between Winn and Booth Enterprises was a settlement account under which Brewton and Booth Enterprises knew that Winn would take action if payment was not made for the fuel. The Booths were Brewton’s parents and owners of Booth Enterprises. Brewton handled all orders, repairs and payments. She also signed these checks, with full authority to do so, but it was unclear whether she had authority to issue an NSF check. She admitted knowing the checks were NSF when she issued them, stating that she told Joe Collins the checks may or may not have been good.
 

 Winn asserts that Brewton is responsible under La. R.S. 9:2782.
 
 [2]
 

 
 *517
 
 Lin other words, Winn seeks to convert this obligation to pay for the fuel into a claim on NSF checks. Under R.S. 9:2782, any drawer (here, Brewton) of the check is liable. Whether or not her parents authorized her to issue the NSF checks, Winn wants Brewton liable for the amount of the checks along with penalties and attorney’s fees under R.S. 9:2782.
 

 Winn does not contest the trial court’s findings that evidence was insufficient that Brewton stopped the credit card payments for fuel and sold all the fuel for cash. However, Winn contends that the trial court erred in exonerating Brewton because she issued the checks, knowing full well they were NSF.
 

 Arguments of Defendant-Appellee, Michelle Brewton
 

 There is no legal or factual basis by which to hold her liable for these debts.
 

 I ¿FACTS
 

 Dana and Douglas Booth owned Booth Enterprises, Inc. Their daughter and employee had no ownership interest in the business at any time. Brewton was never a director or officer of the corporation.
 

 Joseph Collins, acting for Winn, knew that the Trading Post was the business name for Booth Enterprises, which was owned by the Booths. Collins said he did not know Brewton lacked any ownership in the business and acknowledged he requested no corporate documents or information regarding the directors, officers, or finances of Booth Enterprises. Collins did not obtain a personal guaranty from either Booth or Brewton and never requested that Brewton agree to be personally responsible for the payments for fuel and other inventory.
 

 Brewton stated she never represented to Winn that she would personally obligate herself for payments for fuel or product.
 

 
 *518
 
 When Booth Enterprises began operations in 1996, Jackson Wholesale supplied its fuel. Brewton stated the usual practice was that Jackson Wholesale read the pumps on Thursday and brought the fuel bill the following Monday, at which time Brewton gave Jackson Wholesale a partial payment with the remainder of the invoice paid before the pumps were read on Thursday. The weekly invoice was usually paid in two checks.
 

 In 2005, Winn purchased Jackson Wholesale and began doing business with Booth Enterprises. Collins informed Doug Booth that Winn would do business in the same manner as Jackson Wholesale. Within three months of Winn taking over, Booth Enterprises went out of business.
 

 [ ¡¡Brewton stated that Winn employed different procedures from those practiced by Jackson Wholesale. She stated that Jackson’s meter reading times were inconsistent, as was the time for fuel delivery. Ninety percent of Booth Enterprises’ business was from loggers who paid through open accounts when they came into the store (usually twice a day).
 

 It is undisputed that the two checks on which Winn sued were signed by Brewton, who was authorized to sign checks for the business. Brewton and her parents were authorized check signers. She was authorized to write the two checks and her parents did not instruct her otherwise. Her testimony was that when she gave Collins check #4806, she advised Collins there were not enough funds to cover it and asked him to please hold the check until Friday. Loggers who were slow in paying generally paid their accounts on Friday. Brewton did not guarantee that the check would be good on Friday.
 

 Collins testified he was not told to hold the check. However, in an earlier deposition, Collins stated that he did not remember if Brewton asked him to hold the check. On several occasions, he unsuccessfully tried to negotiate the check.
 

 Brewton acknowledged signing check # 4808 and giving it to Collins on September 7, 2005. She told him there were not enough funds and asked him to hold it until Monday so they could get the loggers to pay their bills. Collins confirmed that testimony.
 

 The store ran out of diesel fuel on Thursday, September 8, 2005. When the loggers found out the store did not have diesel, they did not come|fito the store and did not pay their accounts. Brewton took no action or offered any inducement to get more fuel delivered, the last delivery made on September 6 prior to check # 4806 having been issued. Winn had previously accepted partial payments and agreed to hold checks. Previously, when asked to hold checks, Winn had continued to deliver fuel. When the loggers did not pay their bills after the store ran out of diesel, Booth Enterprises went out of business and filed bankruptcy. Brewton was no longer involved in the business after September 12, 2005.
 

 DISCUSSION
 

 Brewton disputes Winn’s claim that she should be found personally liable under La. R.S. 9:2782, which recognizes the responsible party is the entity shown on the check. Here, the corporate checks reflected the name and address of Booth Enterprises.
 

 Further, since this is a penal statute, providing for penalties and attorney’s fees, it must be strictly construed. Though an authorized representative of Booth Enterprises, Brewton admits no liability on the checks. We agree.
 

 Winn’s argument that any person who signs an instrument is a drawer liable on the check (R.S.10:S-103) is incorrect. Sec
 
 *519
 
 tion 3-402 sets out the parameters of liability on a person who signs as a representative, stating that a signer is not liable on a check payable from an account of a represented person who is identified on the check. Brewton signed check nos. 4806 and 4808 as a representative of Booth Enterprises. It was stipulated that Brew-ton was an authorized signatory.
 

 17Brewton faults Winn’s argument that the open account fuel obligation was converted to an obligation on a negotiable instrument. She points out that
 
 Roper v. Newman,
 
 344 So.2d 117 (La.App. 2d Cir.1977), cited by Winn, is factually inapplicable to this dispute, since that case dealt with prescription issues.
 

 The fuel arrangement was a contractual agreement between Winn and Booth Enterprises. There was no personal guarantee by Brewton regarding fuel payments. A juridical person under Louisiana Law, Booth Enterprises is the sole party responsible for its debts.
 

 The trial court found Brewton was not liable under a fraud theory and that, even if she were, the fraud claim had prescribed. The checks were issued in September 2005, and this action was not filed until June 4, 2007. An action for fraud is in tort and prescribes in one year.
 
 [3]
 

 Depending upon the facts, actions against individuals for corporate debts can sometimes be maintained regarding corporate officers, directors, shareholders, promoters or subscribers. Brewton was none of those. Absent fraud, even shareholders, directors and officers are not personally liable for the debts of the corporation. Brewton was simply an employee of Booth Enterprises. “Piercing the corporate veil” applies to shareholders, directors, and officers, not employees.
 

 | ¡/There was no evidence that Brewton represented she would be personally liable for the checks which she wrote as an employee of the corporation.
 

 The trial court found that:
 

 • Brewton told Collins there were insufficient funds and advised him to hold the checks until particular dates;
 

 • Brewton was never told that fuel would no longer be delivered if the check was not provided;
 

 • the evidence showed that Winn had accepted partial payments and held checks in the past;
 

 • there was no inducement to deliver more fuel, since the last fuel was delivered before the first NSF check was prof-erred to Winn; and
 

 • Brewton was a very credible witness.
 

 For the reasons expressed herein and as sagely delineated in the trial court’s excellent Reasons for Judgement, we find that the trial court correctly found Brewton was not liable on these debts. We affirm the judgment below, adopting,
 
 in toto,
 
 the trial court’s incisive and thorough Reasons for Judgment. A model of clarity, it is annexed hereto as an appendix.
 

 DECREE
 

 At the cost of appellant, the judgment of the trial court is AFFIRMED.
 

 19
 

 APPENDIX
 

 WINN FUEL SERVICE, INC.
 

 
 *520
 
 VERSUS NO. 40531
 

 DOUGLAS BOOTH, DANA BOOTH, AND MICHELLE BREWTON STATE OF LOUISIANA
 

 PARISH OF WINN
 

 STATE OF LOUISIANA
 

 EIGHTH JUDICIAL DISTRICT COURT
 

 REASONS FOR JUDGMENT
 

 Judgment will be rendered in favor of MICHELLE BREWTON and against the plaintiff in this matter, rejecting the demands of plaintiff, with plaintiff being cast for all costs of court. The reasons for this decision are as follows:
 

 The fuel contract was between Winn Fuel Service, Inc. and Booth Enterprises of Winn, Inc. and/or Douglas Booth and/or Dana Booth. There was no privity of contract between Michelle Brewton and Winn Fuel Service, Inc.
 

 2. For the reasons set forth in the post trial brief of Michelle Brewton, Michelle Brewton is not liable under LSA-R.S. 9:2782 for the two (2) checks that were the subject of this litigation. Michelle Brewton was only an employee of Booth Enterprises of Winn, Inc. She did have check writing authority. However, the fact that she happened to sign the two (2) checks that are the subject of this litigation did not render her personally responsible when the checks were returned NSF. The checks that she signed were not her checks. They were the checks of her employer who had authorized her to sign them.
 

 There is also no other legal basis upon which Michelle Brewton could be found liable for the amount of the checks or for any of the other damages which might have been suffered by the plaintiff. When she wrote the checks, Michelle Brewton asked Mr. Collins to hold them, and that should have been an indication to Mr. Collins that there were not sufficient funds to cover the checks at the time they were written. Mr. Collins chose to assume that risk. With respect to the first check, Michelle Brewton’s testimony was that she asked Mr. Collins to hold that check until Friday. When Mr. Collins was first asked about that in his deposition, he said he did not remember. At the trial, he said that Michelle Brewton definitely did not ask him to hold the check until Friday. Michelle Brewton’s testimony in this regard was consistent throughout, and credible, and the Court accepts as fact her testimony that she did ask Mr. Collins to hold the first check until the following Friday. The record is also clear that Michelle Brewton asked Mr. Collins to hold the second check until the following Monday. The record is also clear that Michelle Brewton never indicated to Mr. Collins that she was taking personal responsibility for the checks. There is no showing in the record that Michelle Brewton had any duty toward the plaintiff and the testimony does not show that she was guilty of committing a fraud against the plaintiff. Mr. Collins did not do what Michelle Brewton asked and deposited the first check twice before Friday. On September 8, 2009, the second day that the first check was not honored, Mr. Collins refused to deliver any more product to Booth Enterprises. There is no showing in the record that Michelle Brewton had any control or responsibility for what happened after Mr. Collins refused to deliver any more fuel to Booth Enterprises. Mi
 
 *521
 
 chelle Brewton was not legally obligated to inform the plaintiff about anything that Booth |inEnterprises may have decided to do. Again, Michelle Brewton was only an employee of the corporation. She was not an incorporator, director, officer, or shareholder of the corporation, and the record shows no legal basis for finding her liable for any damages which might have been suffered by the plaintiff herein.
 

 4. The Court would note that even if Michelle Brewton had been guilty of committing a fraud against the plaintiff, this action would have prescribed prior to the filing of this suit. In his ruling on February 26, 2008, the Judge stated “The plaintiffs pleading is brought under and characterized by Title 9: The plaintiff does not seek damages for fraud, but rather seeks the relief provided by LSA-R.S. 9:2782.” Thus the Court held that the applicable prescriptive period of plaintiffs claim was five (5) years. However, since the Court’s ruling on the exception, the pleadings in this matter have been expanded to include a prayer for damages for fraud and had the defendant been found to be guilty of committing fraud against the plaintiff, that demand by plaintiff would have been prescribed.
 

 JUDGMENT IN ACCORDANCE WITH THESE REASONS WILL BE SIGNED UPON PRESENTATION.
 

 Winnfield, Louisiana, this 1st day of July, 2009.
 

 /s/ Jacque D. Derr
 

 JACQUE D. DERR
 

 DISTRICT JUDGE
 

 [1]
 

 . For which it was never paid, to the tune of approximately $100,000.
 

 [2]
 

 . La. R.S. 9:2782 Nonsufficient fund checks; damages, attorney fees
 

 A. Whenever any drawer of a check dishonored for nonsufficient funds fails to pay the obligation created by the check within fifteen working days after receipt of written demand for payment thereof delivered by certified or registered mail, the drawer shall be liable to the payee or a person subrogated to the rights of the payee for
 
 *517
 
 damages of twice the amount so owing, but in no case less than one hundred dollars plus attorney fees and court costs.
 

 B. The payee, his agent or assignee, or a holder may charge the drawer of the check a service charge not to exceed twenty-five dollars or five percent of the face amount of the check, whichever is greater, when making written demand for payment. The payee shall post a notice indicating the amount to be charged a drawer of a check if the check is returned for nonsufficient funds. Such notice shall be posted on the payee's business premises in a convenient and conspicuous place where persons entering the location will see it.
 

 C. (1) Before any recovery under Subsection A of this Section may be claimed, a written demand in substantially the form which follows shall be sent by certified or registered mail to the drawer of the check at the address shown on the instrument:
 

 "You are hereby notified that a check numbered _, issued by you on _ (date), drawn upon _, (name of bank), and payable to_, has been dishonored. Pursuant to Louisiana law, you have fifteen working days from receipt of this notice to tender payment in full of the amount of the check plus a service charge of twenty-five dollars or five percent of the face amount of the check, whichever is greater, the total amount due being_Unless this amount is paid in full within the fifteen-working-day period, the holder of the check may file a civil action against you for two times the amount of the check or one hundred dollars, whichever is greater, plus any court costs and reasonable attorney fees incurred by the payee in taking the action.”
 

 (2) Notice mailed by certified or registered mail evidenced by return receipt to the address printed on the check or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making the check.
 

 (3) It shall be prima facie evidence that the drawer knew that the instrument would not be honored if notice mailed by certified or registered mail is returned to the sender when such notice is mailed within a reasonable time of dishonor to the address printed on the instrument or given by the drawer at the time of issuance of the check.
 

 [3]
 

 . Brewton acknowledges that an action to collect on the checks is a contractual action and subject to the longer contractual prescriptive period.