LOBRANO, J.,
dissents with reasons.
hi respectfully dissent from the majority opinion reversing defendant Zuhair Hamed’s conviction and sentence for issuing a worthless check in the amount of one thousand five hundred dollars or more. I disagree with the majority’s conclusion that the evidence was insufficient for a rational trier of fact to conclude that defendant knew the bank account did not have sufficient funds for payment of the check when defendant issued it on October 26, 2007. For the reasons that follow, I would affirm defendant’s conviction and sentence.
Issuing a worthless check is a violation of La. R.S. 14:71, which provides, in pertinent part:
A. (l)(a) Issuing worthless checks is the issuing, in exchange for anything of value, whether the exchange is contemporaneous or not, with intent to defraud, of any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has not sufficient credit with the bank, or other depository for the payment of such check, draft, or order in full upon its presentation.
(b) This Section shall apply to a check, draft, or order tendered for satisfaction, in whole or in part, of payments due on installment contracts, open accounts, or any other obligation for which the creditor has authorized periodic payments or the extension of time in which to pay.
[[Image here]]
2) The offender’s failure to pay a check, draft, or order, issued for value, within ten days after notice of its nonpayment upon presentation has been deposited by certified mail in the United States mail system addressed to the issuer thereof either at the address shown Lon the instrument or the last known address for such person shown on the records of the bank upon which such instrument is drawn or within ten days after delivery or personal tender of the written notice to said issuer by the payee or his agent, shall be presumptive evidence of his intent to defraud.
(Emphasis added).
The court in State v. Mosby, 42,519, pp. 1-2 (La.App. 2 Cir. 5/18/07), 956 So.2d 843, 845, recognized the elements required to convict a defendant for issuing a worthless check as follows:
Under La. R.S. 14:71, to obtain a conviction for issuing of a worthless check the state is required to prove beyond a reasonable doubt that: (1) defendant issued, in exchange for anything of value, whether the exchange is contemporaneous or not; (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which drawn has insufficient funds with the financial institution on which the check is drawn to have the instrument paid in full on presentation; and (4) the instrument was issued with intent to defraud.
The Louisiana Supreme Court has recognized that “[a]n essential element of the crime of issuing worthless checks is that defendant at the time of the issuing be possessed of intent to defraud.” State v. *1196 Jones, 400 So.2d 658, 661 (La.1981). “Moreover, the failure to pay a worthless check within ten days of constructive notice of its nonpayment is ‘presumptive evidence’ of intent to defraud.” :State v. Lindsey, 491 So.2d 371, 373 (La.1986). The Lindsey Court recognized that the presumption was a “permissive presumption” that “allows, but does not require, the finder of fact to infer the fact which is an element of the crime from the basic fact that has been proven.” Id. at 374. “A permissive presumption will generally be upheld unless there is no rational way that the finder of fact could make the connection permitted by the inference.” Id. Stated another way, “[b]ecause a permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the ‘beyond a reasonable doubt’ standard only if, under the facts of the case, there is no rational |sway a trier could make the connection permitted by the inference.” Id. at 376. The permissible presumption in La. R.S. 14:71 has also been held to be a rebuttable presumption. See State v. Collins, 11-485 (La.App. 5 Cir. 12/13/11), 81 So.3d 135.
In this case, on October 26, 2007, defendant issued the $20,597.08 check to Ballard Petroleum in exchange for fuel, or something of value. With regard to whether the State is entitled to a permissive presumption regarding defendant’s intent to defraud, defendant maintains that the certified letter was addressed to “Little Castro” rather than to him. However, Jim Ballard, owner of Ballard Petroleum, testified that after he sent the certified letter, defendant’s response to the letter was an indication that he would pay and “[t]hat he was guilty of that, yes, he understood he owed me the NSF.”
The State also presented testimony that defendant contacted Nick Geraci at the District Attorney’s office in connection with the receipt of the certified letter, advised Geraci that he wrote the NSF check, signed a form acknowledging that he owed $20,597.08 for the NSF check, and paid $7,000.00 towards the debt. Thus, the testimony elicited at trial establishes that defendant acknowledged receipt of the certified letter, voluntarily came to the District Attorney’s office to discuss restitution, and admitted to writing the $20,597.08 NSF check. The testimony presented at trial also established that defendant made a partial payment on the NSF check pursuant to the receipt of the certified letter and his subsequent contact with the District Attorney’s office.
When considering whether a defendant issued a worthless check with the intent to defraud, the Second Circuit noted that “[tjhough intent is a question of fact to be decided by the trier of fact, it need not be proved as a fact, but may be inferred from the circumstances.” State v. Washington, 29,784, p. 4 (La.App. 2 Cir. 9/26/97), 700 So.2d 1068, 1073 (citing State v. Kahey, 436 So.2d 475 L(La.1983)). Here, the testimony and evidence at trial established that by the time defendant went with Ballard to the bank on November 1, 2007, Ballard already had five checks returned NSF from defendant’s company on October 9, 16, 18, 23 and 25, 2007. During the bank visit, Ballard specifically asked defendant if the $126,061.30 cashier’s check would cover all of the checks that had been returned NSF to Ballard to date, and defendant responded, “I guarantee you, Mr. Ballard, that covers everything we owed, all our NSF’s.” The following day, despite defendant’s assurance, the $20,597.08 check dated October 26, 2007, was returned to Ballard for insufficient funds. I believe that when presented with evidence of the five NSF checks and Ballard’s testimony, a fact finder could do nothing but infer that defendant knew there were insufficient funds in the account on October *1197 26, 2007, when he issued the $20,597.08 check, and that he intended to defraud the company.
Furthermore, I find no merit to defendant’s argument that he was merely a representative of Discount City and, therefore, he could not be held liable for the check returned for nonsufficient funds, relying upon Winn Fuel Service, Inc. v. Booth, 45,207 (La.App. 2 Cir. 4/14/10), 34 So.3d 515. Defendant’s reliance upon Winn is misplaced. Winn is a civil case involving La. R.S. 9:2782 (Nonsufficient fund cheeks; damages; attorney fees), while defendant in this case has been charged with violating La. R.S. 14:71, a criminal statute. In addition, Geraci testified that defendant voluntarily came to the District Attorney’s office to discuss restitution on the NSF check, and he admitted that he owed Ballard the money for the NSF check.
Next, I address the defendant’s remaining assignments of error.
|fiIn the second assignment of error, defendant argues that the trial court erred when it determined that the Civil Code Article 1868[1] did not apply in the criminal prosecution. Defendant contends the trial court improperly imputed certain NSF checks as part of defendant’s $126,061.30 payment. Various times during the trial, defendant raised the issue of the applicability of Civil Code articles, at which times the trial court sustained the State’s objections to defense counsel’s attempts to apply the Civil Code to the criminal proceedings. The trial court instructed defense counsel that “this is not Loyola and Poy-dras, sir” and that the Civil Code “doesn’t have jurisdiction over the proceedings here.”
If the obligor had the same interest in paying all debts, payment must be imputed to the debt that became due first.
Title 14 of the Louisiana Revised Statutes, the Louisiana Criminal Code, and Louisiana jurisprudence, support the trial court’s ruling that the Civil Code was not applicable to this case. La. R.S. 14:3 provides the basis for the interpretation of criminal stating:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
Of particular note, the Reporter’s Comments to La. R.S. 14:3 state the following:
A distinction between civil and criminal statutes with reference to interpretation is preserved. Article 3 expressly states that the analogical projection usually permitted in handling civil statutes is not available in interpreting this Code.[2]
IfiThe distinction between the obligation imposed under the Louisiana Civil Code and the affirmative duty imposed under criminal statutes was addressed by the Louisiana Supreme Court in State v. Austin, 374 So.2d 1252, 1254 (La.1979). The issue in Austin was whether the prosecution of a defendant for criminal neglect of family under La. R.S. 14:74 constituted double jeopardy under the federal ■ and state constitutions where the defendant *1198 was found in contempt of court for failure to pay due child support in a prior civil proceeding. The Supreme Court, citing their prior case of State v. Galjour, 215 La. 553, 41 So.2d 215 (1949), stated:
In [Galjour ], this Court distinguished proceedings similar to those with which we are concerned, recognizing that “... the order of court awarding ... alimony (is) merely an incidental or ancillary proceeding flowing from the divorce action and (is) based on (the parent’s) obligation (under Civil Code Article 227) to support his children.... ” Galjour differentiated such a proceeding from proceedings under R.S. 14:74 which are “... criminal in their nature, based on the failure or past omissions of the father to fulfill the obligation to support his children [which the criminal statute itself creates].”
Austin, 874 So.2d at 1254 (emphasis added).
In support of his argument, defendant cites State v. Moran, 400 So.2d 1359 (La. 1981), which involved a defendant who was charged with criminal neglect of family under R.S. 14:74 for failing to provide support for his son. The trial court stated at the criminal trial that child support was a “civil obligation.” Id. at 1362. However, in a footnote, the Moran Court plainly indicated that the matter was not civil in nature:
Even if the civil law were applicable, the imputation is arguably incorrect. C.C. art. 2166 requires imputation of the debt which the debtor at the time of payment had most interest in discharging. Since a parent is subject to criminal sanctions for current failure to support his child, it must be presumed that defendant had most interest in discharging his current support obligation in order to. avoid criminal penalties.
Id. at 1362 n. 1 (emphasis added). The Moran Court later concluded:
We note first that the amount of support required by R.S. 14:74 is not necessarily coextensive with the amount of support which may be (or may have been) fixed under different standards applicable to |7the determination of a civil obligation for child support. Thus, while evidence of a parent’s partial or total failure to discharge his civil obligation is admissible, that evidence is not alone determinative of his guilt of criminal neglect of family. See State v. Guil-lot, 389 So.2d 68 (La.1980). But whatever defendant’s civil obligation is in this case under C.C. art. 227 or under the civil judgment ordering payment of $200 per month, the determination of defendant’s criminal liability depends upon proof of the elements of the crime listed in the criminal statutes.
Id. at 1363 (footnotes omitted).
Defendant’s reliance upon State v. Moran is misplaced, as the Court concluded that the determination of the defendant’s guilt would be determined by the elements of the alleged crime in the criminal statutes. This assignment of error lacks merit.
Defendant, in the third assignment of error, argues that the trial court erred when it denied his motions for post-verdict judgment of acquittal and motions for new trial based on insufficient evidence and the discovery of new material evidence that was not available at trial.
La.C.Cr.P. art. 851 governs grounds for a new criminal trial and provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
*1199 (2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
|s(Emphasis added). A trial court’s ruling regarding a motion for new trial will not be disturbed absent an abuse of discretion. State v. Lewis, 2012-0803, p. 13 (La.App. 4 Cir. 9/25/13), 125 So.3d 1252,1260-61.
With regard to motions for new trial based upon newly discovered evidence, this Court has acknowledged the following:
La.Code Crim. Proc. Art. 851 provides in pertinent part that a motion for a new trial shall be granted whenever
“[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.” La.Code Crim. Proc. art. 851(3). To obtain a new trial based on newly discovered evidence, the defendant must show: 1) the new evidence was discovered after trial; 2) the failure to discover the evidence at the time of trial was not due to the defendant’s lack of diligence; 3) the evidence is material to the issues at trial; and 4) the evidence is of such a nature that it would probably have changed the verdict of guilty. State v. Brisban, 2000-3437, p. 12 (La.2/26/02), 809 So.2d 923, 931.
State v. Nicholas, 2008-0867, p. 2 (La.App. 4 Cir. 6/17/09), 15 So.3d 1179, 1180 (emphasis added); see also La.C.Cr.P. art. 854.[3]
In this case, defendant contended in his motion for new trial that new and material evidence had been discovered that was not available before or during the trial. Specifically, defendant argued that certain records requested on January 4, 2012 by the defense from Iberia Bank were not obtained before the March 2, 201219trial date because “Iberia had technical difficulty in locating the documents.”[4] Thus, by de *1200 fendant’s own admission, the evidence was discovered before trial. Furthermore, the records sought were the records of The Silwady’s Group, LLC, which is defendant’s own company.[5]
Also, a review of Silwady’s Group’s Iberia bank records evidence that defendant issued a check (ultimately returned for nonsufficient funds) on October 26, 2007 for $20,597.08, yet only $586.29 was in the account on that date. On October 28, 2007, Silwady’s Group had a balance of only $15,844.12, also insufficient to cover the $20,597.08 check. On October 24, 2007, the bank statement contains the notation, “Oust Req Stmt Inq.” Additionally, on October 24, 25, and 26, defendant was charged with NSF check fees. Thus, the Iberia Bank statements actually support the finding that defendant was aware that the check was nonsufficient at the time of issuance, particularly in light of the notation that a statement inquiry was requested on October 24, 2007.
Defendant also relies upon State v. Knapper, 555 So.2d 1335 (La.1990), arguing that new evidence arose after the trial in that case which discredited the State’s witness and corroborated a defense witness, and the Louisiana Supreme Court held that the defendant therein should have been granted a new trial. Defendant argues that in this case, Ballard testified that no checks were paid through automatic drafts, but Discount City’s bank statements — not obtained from Iberia Bank until after the trial — established that payments were made to Ballard | invia automatic drafts, including one of the NSF payments, which discredits Ballard’s testimony.
However, as previously discussed herein, the existence of Silwady’s Group’s own Iberia Bank statements were known to defendant prior to trial and could not constitute newly discovered evidence pursuant to La.C.Cr.P. art. 851: Additionally, Knapper is distinguishable because that case involved an eyewitness to a murder who was not discovered until after trial and who undermined the testimony of the State’s only eyewitness.
The third assignment of error lacks merit, as the evidence was discovered before trial, and defendant failed to demonstrate that, even if the evidence was not discovered before trial, it was of such a nature that it would have changed the verdict to not guilty.
In the fourth assignment of error, defendant argues that the trial court erred by imposing .restitution as part of the sentence because he was never the owner or guarantor of Discount City’s Ballard debt. La. R.S. 14:71(G) provides in part that “[i]n addition to any other fine or penalty imposed under this Section, the court shall order as part of the sentence restitution in the amount of the check or checks, plus a fifteen dollar per check service charge payable to the person or entity that initially honored the worthless check or checks, an authorized collection agency, or justice of the peace.” (Emphasis added). This assignment of error lacks merit.
In the fifth assignment of error, defendant argues that the trial court erred when it based the restitution payment on
*1201 the testimony Geraci, an employee of the District Attorney’s office who was not familiar with the payment records of Ballard. Defendant did not specifically address this assignment of error.[6] luHowever, nothing in the restitution hearing transcript evidences that the magistrate court gave Geraci’s testimony undue weight. Additionally, Geraci testified at trial and was qualified to testify at the restitution hearing. This assignment of error lacks merit.
Defendant argues in the sixth and final assignment of error that the trial court erred by failing to take into account the payments that were made to Ballard but were not properly reflected on their invoice. Again, defendant failed to address this assignment of error (see supra n. 6). Nonetheless, the magistrate court allowed defendant to introduce numerous exhibits at the restitution hearing, one of which purportedly demonstrated that defendant made payments to Ballard that were not properly reflected. A review of the restitution hearing transcript evidences that the magistrate court thoroughly reviewed and properly considered evidence submitted by defendant at the hearing before making its ruling. This assignment of error lacks merit.
Accordingly, for the reasons set forth above, I would affirm the defendant’s conviction and sentence.

. La. C.C. art. 1868 provides, in pertinent part:

. See State v. Daniels, 236 La. 998, 109 So.2d 896 (1958) (where the court noted that it is appropriate to take into consideration reporters' comments, which have legislative sanction, to Criminal Code, in interpretation and construction of articles therein).

. La.C.Cr.P. art. 854 provides:
A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;
(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence.

. At the restitution hearing, defendant submitted correspondence from Iberia Bank indicating that the requested documentation was from a former Omni Bank account that had been closed and that there were technical difficulties in obtaining older documents from such accounts. The correspondence, dated March 20, 2012, indicated that Iberia Bank *1200 was "recently able to gain access” to the documents and provided a copy of the check in question on March 17, 2012.

. The address listed for "The Silwady’s Group, LLC” with the Secretary of State at the time of trial was 2013 South Claiborne Avenue, New Orleans, Louisiana, 70125. The address listed for “Discount City" on the Ballard credit account agreement and credit application is also 2013 South Claiborne Avenue. The credit application also indicates that the company name is "Little Castro, LLC (Discount City).”

. The State contends that the defendant failed to brief this assignment of error, and it is deemed waived. See State v. Edwards, 2013-0665, p. 2 (La.App. 4 Cir. 1/22/14), 133 So.3d 132, 134 ("All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.") (citing Uniform Rules, Courts of Appeal, Rule 2-12.4).